IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>LENOVO GROUP LTD., LENOVO HOLDING CO., INC., and LENOVO (UNITED STATES) INC.,<br><br>       Defendants. | Civil Action No. 13-2108-RGA |
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., LG DISPLAY CO., LTD., and LG DISPLAY AMERICA, INC.,<br><br>       Defendants. | Civil Action No. 13-2109-RGA |
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>VIZIO, INC.,<br><br>       Defendant. | Civil Action No. 13-2112-RGA |

## MEMORANDUM OPINION

Joseph J. Farnan, Jr., Esq., Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE; Jeffrey R. Bragalone, Esq. (argued), Patrick J. Conroy, Esq., Justin B. Kimble, Esq., Daniel F. Olejko, Esq., James R. Perkins, Esq., T. William Kennedy, Jr., Esq., Stephanie Wood, Esq., Bragalone Conroy P.C., Dallas, TX, attorneys for Plaintiffs Delaware Display Group LLC and Innovative Display Technologies LLC.

Adam W. Poff, Esq., Pilar G. Kraman, Esq., Young, Conaway, Stargatt & Taylor LLP, Wilmington, DE; Jason C. Lo, Esq., Raymond A. LaMagna, Esq., Gibson, Dunn & Crutcher LLP, Los Angeles, CA, attorneys for Defendant VIZIO, Inc.

Richard L. Horwitz, Esq., David E. Moore, Esq., Stephanie O'Byrne, Esq., Bindu A. Palapura, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Eric J. Klein, Esq., Todd E. Landis, Esq., Fred I. Williams, Esq., Akin, Gump, Strauss, Hauer & Feld LLP, Dallas, TX, attorneys for Defendants Lenovo Holding Company, Inc. and Lenovo (United States) Inc.

David E. Ross, Esq., Benjamin J. Schladweiler, Esq. (argued), Ross, Aronstam & Moritz LLP, Wilmington, DE; Amanda K. Streff, Esq., Robert G. Pluta, Esq., Mayer Brown LLP, Chicago, IL; Alison T. Gelsleichter, Esq., Anita Y. Lam, Esq., Baldine B. Paul, Esq., Jamie B. Beaber, Esq., Kfir B. Levy, Esq., Tiffany A. Miller, Esq., Mayer Brown LLP, Washington, D.C.; attorneys for Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Display Co., Ltd., and LG Display America, Inc.

John C. Phillips, Jr., Esq., David A. Bilson, Esq., Phillips, Goldman & Spence, P.A., Wilmington, DE; Andrea L. Gothing, Esq., Robins Kaplan LLP, Mountain View, CA; Tara G. Sharp, Esq. (argued), Robins Kaplan LLP, Atlanta, GA, attorneys for non-parties Rambus Delaware LLC and Rambus, Inc.

February 23, 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Defendants' Motion to Compel Compliance with Subpoenas Issued to Rambus, Inc. and Rambus Delaware LLC (D.I. 107)[1] and Plaintiffs' Motion to Amend Complaint (D.I. 159). The issues have been fully briefed (D.I. 107, 135, 136, 155, 159, 180, 193).[2] The Court heard oral argument on December 22, 2015. (D.I. 190). For the reasons stated herein, the motion to compel is **GRANTED IN PART** and **DENIED IN PART** with respect to Plaintiffs. It is **DENIED** with respect to Rambus. The motion for leave to amend is **DENIED**.

## I.   PROCEDURAL BACKGROUND

On December 31, 2013, Plaintiffs Delaware Display Group LLC ("DDG") and Innovative Display Technologies LLC ("IDT") filed patent infringement lawsuits against Defendants. (D.I. 1; C.A. No. 13-2109, D.I. 1; C.A. No. 13-2112, D.I. 1). Plaintiffs allege that Defendants infringe U.S. Patent Nos. 7,434,974 (the "'974 patent") and 7,537,370 (the "'370 patent") (collectively "patents-in-suit"). On July 9, 2015, Defendants served document subpoenas on non-parties Rambus, Inc. and Rambus Delaware LLC (collectively "Rambus") pursuant to Fed. R. Civ. P. 45. (D.I. 108, Exs. 4, 5). On November 4, 2015, Defendants moved to compel compliance with the subpoenas. (D.I. 107). The subpoenas dealt with several categories of documents. (*Id.*). Defendants sought discovery of teardown reports created by Rambus after a March 25, 2013 consulting agreement, unredacted royalty reports received by Rambus from Plaintiff IDT, and email communications "between Rambus and Acacia and/or Plaintiffs from 2013 to present."[3] (*Id.* at 7, 13-15). Both Plaintiffs and Rambus opposed the motion. (D.I. 135, 136).

---

[1] All citations are to Civil Action No. 13-2108, unless otherwise indicated.

[2] The motion to amend was briefed separately in the actions against LG (C.A. No. 13-2109, D.I. 204, 217, 224) and Vizio (C.A. No. 13-2112, D.I. 142, 155, 159).

[3] "Acacia" refers to Acacia Research Group LLC.

3

At the December 22, 2015 discovery dispute hearing, the Court heard argument on the motion to compel. (D.I. 190 at 5-19). Finding that the unredacted royalty reports, the post-March 2013 teardown reports, and the emails between Rambus and Acacia and/or Plaintiffs were also in the possession of Plaintiffs, the Court relieved Rambus of any obligation to produce the requested documents. (*Id.* at 6, 15-16, 18-19). The Court took under advisement the issue of whether Plaintiffs may be compelled to produce these documents. (*Id.* at 74). While the motion to compel briefing is directed primarily at Rambus, I find that the legal analysis applicable to Rambus is similar or identical to the analysis applicable to Plaintiffs.

On December 4, 2015—the deadline for "[a]ny motions to amend the pleadings to allege inequitable conduct and/or willfulness"—Plaintiffs moved to amend the complaint in each action to add allegations of willful infringement. (D.I. 30, 159). All defendants opposed the motion.

## II.    FACTUAL BACKGROUND

Non-party Rambus owned the patents-in-suit for a period of approximately three years, from December 2009 until January 2013. (D.I. 139, Ex. 1 at 31-32). On January 30, 2013, Rambus sold the patents-in-suit to Acacia. (D.I. 108, Ex. 2). According to the sale agreement, Rambus would not retain any legal interests in the patents-in-suit, but would receive a certain percentage of any proceeds collected through licensing or litigation. (D.I. 108, Ex. 2). Shortly after the sale, on March 25, 2013, Acacia retained Rambus as a consultant to perform certain services "requested by COMPANY counsel, Eric Lucas, in anticipation of potential litigation." (D.I. 108, Ex. 3).[4] Pursuant to the consulting agreement, Rambus would perform technical analyses on products supplied to Rambus by Acacia. (*Id.*). These analyses are referred to generally as "teardowns" and involved disassembling the products, taking photographs and

---

[4] "COMPANY" refers to "Acacia Research Group LLC." (D.I. 108, Ex. 3 at 2).

measurements, and preparing a report. (D.I. 136 at 9; D.I. 190 at 16-18; D.I. 107 at 5). These

teardowns were to be performed "[f]rom time to time and upon request by Eric Lucas or other in-

house legal counsel of the COMPANY." (D.I. 108, Ex. 3 at 7). The work performed by Rambus

pursuant to the consulting agreement was performed at a Rambus facility located in Brecksville,

Ohio. (D.I. 139, Ex. 1 at 12). The physical remains of any teardowns remain in a storage facility

in Ohio. (D.I. 190 at 15).

IDT was formed on March 13, 2013. (D.I. 108, Ex. 11). On July 26, 2013, Acacia

assigned "all of the right, title and interest in the" patents-in-suit to IDT. (D.I. 19 ¶¶ 21-22).

DDG was formed on December 20, 2013. (D.I. 108, Ex. 12). One day later, IDT assigned "all

of the right, title and interest in the" '196 patent to DDG. (D.I. 19 ¶¶ 20, 23).

## III.    LEGAL STANDARD

Fed R. Civ. P. 37 applies to motions to compel discovery, providing that "[o]n notice to

other parties and all affected persons, a party may move for an order compelling . . . discovery."

Fed. R. Civ. P. 37(a)(1). Generally, "[p]arties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Fed. R. Civ. P. 26(b)(1) (as amended Dec. 1, 2015). While it is well-settled that the Federal

Rules permit broad discovery, a party's right to discovery is not without limits. *Bayer AG v.*

*Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (citations omitted). Generally, a party moving

to compel discovery bears the burden of demonstrating the relevance of the requested

information. *Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 662 F. Supp. 2d 375, 381 (D.

Del. 2009). However, when a party claims protection from discovery by asserting the existence

of an evidentiary privilege, the party seeking such protection bears the burden of establishing the

privilege. *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 377 (D. Del. 2010).

## IV.   ANALYSIS

In resisting discovery of the post-March 2013 teardown reports, Plaintiffs raise three arguments. First, they contend that the reports are attorney work product. (D.I. 135 at 12-14). Second, they argue that the reports were prepared by a non-testifying expert and are therefore protected by Fed. R. Civ. P. 26(b)(4)(D). (*Id.*). Third, they argue that the teardown reports are protected by the common interest privilege. (*Id.* at 16-23). Regarding the unredacted royalty reports, Plaintiffs assert that they contain non-testifying expert information protected by Fed. R. Civ. P. 26(b)(4)(D), as well as "irrelevant and highly sensitive information" about attorney fees "paid in conjunction with licensing and litigating the patents-in-suit." (*Id.* at 24). Regarding the emails, Plaintiffs argue that Defendants should comply with procedures outlined in the Discovery Order. (*Id.* at 23-24; *see* D.I. 190 at 8-11). Each of these issues is addressed separately below.

### A. Work Product Protection for Teardown Reports

The work product doctrine, as codified in Fed. R. Civ. P. 26(b)(3), provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," unless the party seeking discovery has (1) "substantial need for the materials" and (2) "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). The party asserting protection under the work product doctrine "has the burden of demonstrating that the disputed documents were prepared by or for the party or its attorney and prepared in anticipation of litigation or for trial." *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 163 (D. Del. 2001). In order "to satisfy that burden, the party must establish that the material . . . [was] prepared in anticipation of litigation for that party." *Id.* If the document sought "is prepared for

6

a nonparty to the litigation, work product protection does not apply, even if the nonparty is a

party to closely related litigation." 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.70

(3d ed. 2015); *see also In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989); *LG*

*Elecs., Inc. v. Motorola, Inc.*, 2010 WL 4513722, at *3-4 (N.D. Ill. Nov. 2, 2010).

Here, the teardown reports were prepared by Rambus pursuant an agreement with Acacia.

(D.I. 135 at 10-11; D.I. 108, Ex. 3). Neither Rambus nor Acacia is a party to this case. Despite

the existence of a patent assignment agreement between Acacia and Plaintiffs, Acacia is neither

DDG nor IDT.[5] Therefore, it is unclear to me how Plaintiffs could possibly claim work product

protection in documents prepared by a third party for another third party. *See, e.g., LG Elecs.*,

2010 WL 4513722, at *3-4. Plaintiffs have not established, nor could they, "that the material . . .

was prepared in anticipation of litigation for . . . [Plaintiffs]." *Novartis Pharms.*, 203 F.R.D. at

163. Since the teardown reports were not prepared for another party to this litigation, they

cannot be protected by the work product doctrine. *In re Cal. Pub. Utils. Comm'n*, 892 F.2d at

781; 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.70 (3d ed. 2015); *see also FTC*

*v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (dicta) ("[T]he literal language of the Rule protects

materials prepared for . . . litigation . . . as long as they were prepared by or for a party to the

subsequent litigation.").

Plaintiffs argue that "[u]nder the terms of the consulting agreement, Rambus performed

teardown analyses at the express direction of Eric Lucas, acting initially as counsel for Acacia

and later as counsel for IDT and DDG." (D.I. 135 at 11). It is not entirely clear what Plaintiffs

---

[5] Plaintiffs themselves have asserted this throughout this litigation. For instance, in objecting to LG's Third Set of Interrogatories, Plaintiffs stated the following: "Plaintiffs object to Defendants' inclusion of third parties Acacia Research Group LLC, Acacia Research Corporation, parents, affiliates, predecessors, and successors in [the] definition [of "Plaintiffs"] because these entities are separate and distinct from Plaintiffs." (D.I. 108, Ex. 13 at 2). Plaintiffs also stated that the knowledge of these entities was "not attributable to Plaintiffs." (*Id.*).

7

mean by this statement, but it is clear that while Mr. Lucas may serve as counsel for IDT and DDG, he did not request teardowns from Rambus in that capacity. Mr. Lucas has supplied a declaration that states: "Under the Consulting Agreement . . ., I directed Rambus to perform teardown analyses of certain LCD display products." (D.I. 137, Ex. K ¶ 7). The consulting agreement itself provides that "CONSULTANT's engagement and the Services have been requested by COMPANY counsel, Eric Lucas, in anticipation of potential litigation. CONSULTANT's work product will be used by the COMPANY's litigation counsel in evaluating potential litigation." (D.I. 108, Ex. 3 ¶ 2.1; *see also* D.I. 137, Ex. O at 6-8). In other words, Mr. Lucas asked for teardowns for Acacia pursuant to an agreement between Acacia and Rambus. Plaintiffs' reference to the role of Eric Lucas with respect IDT and DDG[6] does not suffice to contradict Mr. Lucas' declaration that the teardown reports were prepared in anticipation of litigation by Rambus for Acacia.

Therefore, I conclude that Plaintiffs cannot claim work product protection in the teardown reports.

## B. Non-Testifying Expert Protection for Teardown Reports

Fed. R. Civ. P. 26(b)(4)(D) provides that "a party may not . . . discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial," except as provided in Fed. R. Civ. P. 35(b), or unless the requesting party makes a "showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D).

---

[6] And, as noted, DDG did not even exist at the time of the agreement. (D.I. 137, Ex. E).

The documents at issue were prepared by Rambus as a consultant for Acacia. (D.I. 135 at 10-11; D.I. 108, Ex. 3). Acacia is not a party to this litigation. Therefore, Fed. R. Civ. P. 26(b)(4)(D) cannot apply as Defendants are not seeking "facts known or opinions held by an expert who has been retained or specially employed *by another party* in anticipation of litigation." Fed. R. Civ. P. 26(b)(4)(D) (emphasis added). The rule protecting non-testifying experts "is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984); *see also Plymovent Corp. v. Air Tech. Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007) (discussing several policy considerations, including "preventing unfairness that would result from allowing an opposing party to reap the benefits from another party's efforts and expense"); *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at *7 (S.D.N.Y. June 27, 2002) (in the context of work product protection, stating that the Advisory Committee notes to Rule 26 "make clear that the focus of the rule is on the competitive balance between the litigants, a concern not directly implicated by discovery from a non-party"). The Rule itself distinguishes between experts that are "not expected to be called as a witness at trial" and "expert[s] whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). Neither the text nor the policy of the Rule applies to a situation where a party seeks protection of documents prepared by a "consultant" on behalf of a non-party. As explained in the previous section, that Eric Lucas may now serve as counsel to IDT and DDG does not alter this conclusion.

Therefore, I conclude that Plaintiffs cannot claim the protections of Fed. R. Civ. P. 26(b)(4)(D) for the teardown reports.

## C. Common Interest Privilege Protection for Teardown Reports

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). In order for the privilege to apply, there must be "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 68 (Am. Law. Inst. 2000)). The party asserting the privilege bears the burden of establishing the requisite elements. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). A communication is only privileged if made in confidence. *Teleglobe*, 493 F.3d at 361. Therefore, if "persons other than the client, its attorney or their agents are present, the communication is not made in confidence." *Id.* Further, "if a client subsequently shares a privileged communication with a third party, then it is no longer confidential." *Id.* The common interest doctrine is an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege. *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010); *see also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004). The privilege protects "all communications shared within a proper 'community of interest.'" *Teleglobe*, 493 F.3d at 364 (internal citations omitted). To show that there is a proper community of interest, the interests "must be 'identical, not similar, and be legal, not solely commercial.'" *Leader Techs.*, 719 F. Supp. 2d at 376 (quoting *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996)). Additionally, to show that the members of the community are "allied in a common legal cause," the party asserting the privilege bears the burden of showing "that the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation." *See In re Regents of the Univ. of Cal.*, 101 F.3d at 1389 (quoting *In re Grand*

*Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 386 (S.D.N.Y. 1975)); *see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986).

Here, the parties dispute whether there is a common interest between Acacia and Rambus.[7] (D.I. 135 at 16-17; D.I. 107 at 9). Plaintiffs argue that Rambus and Acacia (as well as Plaintiffs) have a common legal interest in the "enforcement and the validity of the patents-in-suit." (D.I. 135 at 16). Plaintiffs also argue that the written agreements between Acacia and Rambus were executed "to facilitate their joint legal strategy." (*Id.*). Defendants argue that the assignment agreement and the consulting agreement indicate that Rambus and Acacia, at most, "share a commercial interest related to the performance of the Consulting Agreement." (D.I. 107 at 9-10). Defendants further contend that because Rambus retained no legal interest in the patents-in-suit, no common interest relationship exists. (*Id.*).

There is no common interest between Acacia and Rambus. Rambus assigned the entirety of its legal interests to the patents-in-suit when it entered into the assignment agreement with Acacia. The agreement provides that Rambus assigns to Acacia: "the entire right, title, and interest in and to the Patents." (D.I. 108, Ex. 2 ¶ 1.1). The agreement further provides that Acacia "in its sole judgment decide[s] to institute enforcement actions . . . [and] reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition." (*Id.* ¶ 6.1). Since Rambus possesses no legal interest in the patents-in-suit, it seems unlikely that Rambus and Acacia have an identical legal interest. *See*

---

[7] The common interest doctrine is an exception to attorney-client privilege; it is not a stand-alone basis for claiming privilege. *See Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004). Neither party explains how the attorney-client privilege applies in the first place. Plaintiffs seem to argue that because the reports were requested by Eric Lucas, from Rambus, on behalf of Acacia, the reports are subject to the attorney-client privilege by virtue of the common interest relationship between Acacia and Rambus. Since Defendants only dispute the existence of a common interest relationship, the Court will assume, without deciding, that if the requisite common interest relationship exists, the attorney-client privilege applies.

*Leader Techs.*, 719 F. Supp. 2d at 376; *In re Rivastigmine Patent Litig.*, 2005 WL 2319005, at \*4 (S.D.N.Y. Sept. 22, 2005) (holding that the patent rights of the assignors were extinguished and that despite having a right to receive royalties, "[s]uch economic rights . . . are generally not sufficient to support application of the common interest doctrine"), *aff'd*, 2005 WL 31159665 (S.D.N.Y. Nov. 22, 2005). Another district court reached the same conclusion when examining this exact assignment agreement. *See Microsoft Corp. v. Acacia Research Corp.*, 2014 WL 6450254, at \*2-3 (S.D.N.Y. Nov. 17, 2014).[8] Plaintiffs argue that this conclusion runs contrary to caselaw in Delaware and in the Federal Circuit. (D.I. 135 at 23). The cases cited by Plaintiffs are unavailing. For instance, in *In re Regents of the Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996), the parties had "substantially identical" legal interests because of an "ultimately exclusive . . . license agreement." *Id.* at 1390. In *MobileMedia Ideas, LLC v. Apple Inc.*, 890 F. Supp. 2d 508 (D. Del. 2012), the sellers retained "reversionary rights" and remained "licensees" under the agreement at issue. *Id.* at 516-17. Further, the sellers served on the board of the buyer entity— which they had formed "to acquire, develop, administer and manage [i]ntellectual [p]roperty rights" of the sellers—and retained "veto power" over any sales by the buyer entity. *Id.* at 511, 516 (alterations in original). In *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 402332 (Del. Super. Ct. Feb. 12, 2009), the seller was on a "patent assertion team" with the other members of the community of interest. *Id.* at \*3. That team had an "[A]ssertion Management Committee . . .

---

[8] Plaintiffs argue that the "primary authority on which the *Microsoft* discovery order relied," *United States v. Schaeffler*, 2014 WL 2208057 (S.D.N.Y. May 28, 2014), was vacated by the Second Circuit. (D.I. 135 at 22); *see Schaeffler v. United States*, 806 F.3d 34 (2d Cir. 2015). This is a mischaracterization of the district court's reliance on *Schaeffler*, which was cited for a basic explanation of the common interest doctrine, and for the proposition that the "mere recital [of a common interest in an agreement] is hardly conclusive or compelling on whether such an interest exists." *Microsoft Corp.*, 2014 WL 6450254, at \*1-2. The Second Circuit vacated *Schaeffler* on the grounds that, based on the tax documents at issue, a joint legal enterprise existed. *Schaeffler*, 806 F.3d at 41-42. The principles upon which the *Microsoft* district court relied were not disturbed. *Id.*

which would manage the licensing and litigation activities of the venture." *Id.* (alterations in original). In these cases, the members of the communities of interest were engaged in a common legal strategy. Disclosures were made in furtherance of that legal strategy. Plaintiffs have not identified any case which holds that a mere right to receive a royalty, along with the obvious "interest" in receiving that royalty, suffices to create a shared, identical legal interest. Plaintiffs argue that Acacia and Rambus share "the same interest in obtaining strong and enforceable patents." *See In re Regents of the Univ. of Cal.*, 101 F.3d at 1390. This proves too much. Plaintiffs' logic would find that any seller with rights to royalty payments is engaged in a common legal cause with its buyer. The only interest Rambus retained in the patents is a commercial one.[9] Thus, Plaintiffs have failed to show that teardown reports "would not have been made but for the sake of securing, advancing, or supplying legal representation." *See In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. at 386. Therefore, the common interest privilege does not apply.

### D. Unredacted Royalty Reports

Plaintiffs have produced redacted versions of royalty reports which disclose the distribution of funds between Rambus and Plaintiff IDT. Following the Court's request, Plaintiffs produced the unredacted versions to the Court for *in camera* review. (*See* D.I. 190 at 6-7). Plaintiffs contend that the unredacted reports include two classes of information: "information about Plaintiffs' non-testifying consultants that is not discoverable under Rule 26(b)(4)(D) . . ., and information about attorney's fees paid in conjunction with licensing and

---

[9] The patent assignment agreement does contain a "Grant Back License." (D.I. 108, Ex. 2 §§ 2.1). This is a non-exclusive, royalty-free license that is granted in the event that Acacia "transfers or assigns its interest" in the agreement. *Id.* This does not in any way align the legal interests of Acacia and Rambus in a joint legal strategy.

litigating the patents-in-suit against other companies, which is irrelevant and highly sensitive information." (D.I. 135 at 24).

From the Court's review, it is not evident how the documents reveal any information about Plaintiffs' non-testifying experts. The reports do not appear to reveal the identities of any consultants. Even if they did, however, that information is discoverable without showing exceptional circumstances.[10] Therefore, the information in the royalty reports is not subject to protection under Fed. R. Civ. P. 26(b)(4)(D).

Plaintiffs do not, and likely could not, assert attorney-client privilege with respect to the attorneys' fees disclosed in the reports. *See Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999); *Hayes v. Am. Int'l Grp.*, 2013 WL 2414005, at *3 (E.D. Pa. June 4, 2013) ("[T]he attorney-client privilege is not a basis for . . . refusal to share fee information so long as nothing is revealed about the services performed."). Plaintiffs instead argue that the information about attorney's fees is "irrelevant and highly sensitive." (D.I. 135 at 24). This may be true, but such a fact does not entitle Plaintiffs to redact information, which they deem irrelevant, from otherwise relevant documents. The Protective Order does not obligate a party to produce "documents, information or other material that a Party contends is protected from disclosure" by reason of some "privilege, doctrine, or immunity." (D.I. 58 ¶ 10). In the absence of such an assertion of protection, however, a party may not redact information that it unilaterally deems

---

[10] The Court acknowledges that there is a split of authority regarding whether a party seeking the identity of a non-testifying expert must show "exceptional circumstances." *See In re Welding Fume Prods. Liab. Litig.*, 534 F. Supp. 2d 761, 767-69 (N.D. Ohio 2008) (discussing split between *Ager v. Stormont*, 622 F.2d 496 (10th Cir. 1980) and *Baki v. B.F. Diamond Constr. Co.*, 71 F.R.D. 179 (D. Md. 1976)). District courts in the Third Circuit, however, have generally embraced the view of *Baki*, and held that the "disclosure of [an] expert's identity . . . is not subject to a heightened showing of 'exceptional circumstances.'" *Eisai Co. v. Teva Pharms. USA, Inc.*, 247 F.R.D. 440, 442 (D.N.J. 2007); *see also Arco Pipeline Co v. S/S Trade Star*, 81 F.R.D. 416, 417 (E.D. Pa. 1978); *Butler v. Harrah's Marina Hotel Casino*, 1987 WL 16691, at *2-3 (E.D. Pa. Sept. 8, 1987).

sensitive, embarrassing, or irrelevant. *See* Fed. R. Civ. P. 34(b)(2)(E); *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at \*1-2 (W.D. Pa. Sept. 30, 2008).[11]  If Plaintiffs felt the Protective Order was inadequate, they could have moved to modify it.

I have reviewed the documents at issue here and am skeptical of the relevance of the redacted portions of the documents. Further, I recognize that the information sought is sensitive. If the documents at issue were configured in another manner, perhaps the result here would be different. As it stands, the documents are relevant and there is no basis upon which Plaintiffs can make redactions. The sensitive information is protected from further disclosure by the Protective Order. Therefore, I reluctantly conclude that Plaintiffs must produce unredacted versions of the royalty reports.

### E. Emails Between Rambus and Acacia and/or Plaintiffs

Defendants sought production of all emails between Rambus and Acacia and/or Plaintiffs during the period of 2013 to present. (D.I. 98 at 15). At oral argument, Defendants narrowed the request to cover the period of March 2013 to present, and requested only emails "concerning the [t]eardown work that Rambus did for Acacia." (D.I. 190 at 8-11). Since all the requested emails are in the possession of Plaintiffs, they must first be sought from Plaintiffs. (*See id.* at 18-19).

---

[11] The Court acknowledges that there is a split of authority on the question of whether relevance is a proper ground for redactions. *Compare Spano v. Boeing Co.*, 2008 WL 1774460, at \*2 (S.D. Ill. Apr. 16, 2008) (holding that redaction is appropriate); *Schiller v. City of New York*, 2006 WL 3592547, at \*7 (S.D.N.Y. Dec. 7, 2006) (same) *with ArcelorMittal Cleveland Inc. v. Jewell Coke Co.*, 2010 WL 5230862, at \*2-3 (N.D. Ohio Dec. 16, 2010) (holding that redaction is not permitted under Fed. R. Civ. P. 34); *Beverage Distribs., Inc. v. Miller Brewing Co.*, 2010 WL 1727640, at \*4 (S.D. Ohio Apr. 28, 2010) (same); *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at \*4-5 (W.D. Tenn. Jan. 30, 2002) (same). The Court finds the interpretation disallowing redaction to be more persuasive. Since the producing party is ordinarily "not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order," redactions are unnecessary and, as this motion demonstrates, disruptive. *See Beverage Distribs.*, 2010 WL 1727640, at \*4. The Court should be "burdened with an *in camera* inspection of redacted documents . . . only when necessary to protect privileged material whose production might waive the privilege." *Id.*

The Court notes that it has rejected Plaintiffs' assertions of protection for the teardown reports. Since the requested emails pertain to the same subject matter, Plaintiffs cannot rely on those bases in objecting to the discovery of the requested emails. (*See id.* at 10). When seeking the production of these emails from Plaintiffs, however, Defendants must comply with the procedures outlined in the Discovery Order. (*See* D.I. 59, D.I. 190 at 7, 18-19). To the extent the motion seeks to compel the production of emails, without complying with the procedures outlined in the Discovery Order, the motion is denied.

### F. Motion to Amend the Complaint

Plaintiffs move for leave to amend the complaint in each action. (D.I. 159, C.A. No. 13-2109, D.I. 204, C.A. No. 13-2112, D.I. 142). Plaintiffs seek to add allegations of willfulness. Defendants object on grounds that motion for leave to amend has been brought with undue delay, and that granting leave to amend would be both prejudicial and futile.

Fed. R. Civ. P. 15(a)(2) provides that a court should "freely give leave [to amend] when justice so requires." The "grant or denial of an opportunity to amend is within the discretion of the District Court." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend should generally be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S at 182. If the complaint, as amended, would not survive a motion to dismiss, leave to amend may be denied as futile. *See Shane v. Fauver*, 213 F.3d at 115. Unfair prejudice exists when an unfair burden would be placed on the opposing party. *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 1776112, at *3 (D. Del. Apr. 24, 2013). In assessing that issue, courts look to factors

16

including "whether allowing an amendment would result in additional discovery, costs, and preparation to defend against new facts or new theories." *Jang v. Boston Sci. Scimed, Inc.*, 2012 WL 3106753, at *2 (D. Del. July 31, 2012) (internal quotation marks omitted). The non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). "[T]he question of undue delay requires [that the court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Defendants have not made an adequate showing of unfair prejudice. Lenovo states that Plaintiffs have not supplied adequate infringement contentions and now seek to "further prejudice Lenovo" by adding "a wholly new infringement theory." (D.I. 180 at 4). LG Display claims prejudice is evident because "there is no question that Plaintiffs are expanding the case and adding a new theory of liability in alleging willful infringement against LGD, when Plaintiffs have not fully alleged direct infringement." (C.A. No. 13-2109, D.I. 217 at 12). Vizio writes: "it appears Plaintiffs elected to delay the motion until the last conceivable day, so as to hide the fact that they were pursuing a willful infringement claim, and thus prejudice VIZIO's ability to timely prepare its defense." (C.A. No. 13-2112, D.I. 155 at 16). These are conclusory claims of prejudice.[12] None of these claims of prejudice amounts to a showing that any defendant was "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [Defendants] would have offered had the amendments been timely." *Bechtel*,

---

[12] The motions to amend were filed on the last day of fact discovery. Since discovery relating to willfulness primarily concerns Defendants' knowledge, and Defendants likely do not need formal discovery to learn their own knowledge, it is not obvious that there would be prejudice.

886 F.2d at 651. I am therefore not persuaded that leave should be denied due to unfair prejudice.

The Court next addresses futility. To state a claim for willfulness, "the complaint must adequately allege factual circumstances in which the patents-in-suit are called to the attention of the defendants," and "must plead facts giving rise to at least a showing of objective recklessness of the infringement risk." *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 236 (D. Del. 2012) (internal quotations and alterations omitted); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007).

For each of the asserted patents-in-suit, Plaintiffs allege two facts relating, or purporting to relate, to willfulness. One is that Rambus met with Lenovo in 2012, during which time Lenovo expressed interest in Rambus's "display technology." [13] At the time, Rambus's patent portfolio "included the patents-in-suit and/or their applications." (The '974 patent issued in 2008 and the '370 patent issued in 2009.) (D.I. 159, Ex. 1 ¶¶ 10-11)). Plaintiffs assert that, "[u]pon information and belief, Lenovo continued to meet and correspond with Rambus to discuss licensing the patent portfolio that included the patents-in-suit." (*Id.* ¶¶ 30, 43). The other fact is that Plaintiffs sued Lenovo on December 31, 2013, asserting infringement of the patents-in-suit. (*Id.* ¶¶ 32, 45). From this, Plaintiffs assert willful infringement since the date when Rambus and Lenovo met. The second fact cannot be the basis for a willfulness allegation. *See Callwave Commc'ns LLC v. AT & T Mobility LLC*, 2014 WL 5363741, at *1 (D. Del. Jan. 28, 2014). The

---

[13] This discussion relates to Lenovo, but the allegations against LG and Vizio are similar. All the allegations involve actions undertaken by Rambus in 2012 and 2013. Plaintiffs allege that Vizio notified LG Display of Rambus' allegations of patent infringement in January 2013. (*See, e.g.*, C.A. No. 13-2109, D.I. 204, Ex. 1 ¶¶ 33-34). Further, Plaintiffs allege that Rambus sent a letter, with a licensing offer, to LG in February 2013. (*Id.* ¶ 35). With respect to Vizio, Plaintiffs allege that Rambus contacted Vizio in 2012, to "present[] a licensing offer . . .", making an allegation that accused display products infringed Rambus's patent portfolio." (*See, e.g.*, C.A. No. 13-2112, D.I. 142, Ex. 1 ¶¶ 31-33).

first fact, taken in the light most favorable to Plaintiffs, could be the basis for an assertion of willful infringement, since it could be interpreted to say, Rambus advised Lenovo of its technology and the patent licenses supporting it, and Lenovo took the technology but not the license.  Since the complaint as amended would survive a motion to dismiss, leave is not denied as futile.  *See Shane v. Fauver*, 213 F.3d at 115.

Plaintiffs, however, offer nothing as to why they waited until nearly two years after filing the complaint to assert willfulness.  This is particularly hard to understand, since it seems that the only legitimate basis for the willfulness assertion was something that Plaintiffs undoubtedly knew before ever filing the original complaint.  The patents came from Rambus to Acacia to Plaintiffs.  Acacia did "due diligence" before acquiring the patents.  (D.I. 108, Ex. 2 §§ 1.2, 1.3).  The only discovery on the docket of Rambus is by Defendants.  It is apparent that Plaintiffs have obtained Rambus's relevant documents without a subpoena.

In arguing that the motion for leave to amend is timely, Plaintiffs assert that "[t]he parties' prior agreement to the deadline for filing motions to amend to plead willfulness is dispositive."  (C.A. No. 13-2112, D.I. 159 at 5).  I disagree.  The Court's discretion to grant or deny leave to amend is not limited in such mechanistic ways.  The question of whether a motion for leave to amend is timely under the scheduling order is certainly relevant to the question of whether there has been undue delay.  They are not, however, the same question.  Just as a motion filed after the deadline could be filed without undue delay, so too could undue delay exist when a motion is filed before the deadline.[14]

[14] If a motion is untimely under the scheduling order, the moving party must first show good cause before seeking amendment under Rule 15.  Fed. R. Civ. P. 16(b); *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 339-40 (3d Cir. 2000).

The Third Circuit has advised that "[d]elay becomes 'undue', and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). When "a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Plaintiffs have already amended the complaint once in the actions against Lenovo and LG, and amended it twice in the action against Vizio. Plaintiffs provide no explanation for why they did not seek leave earlier or why the allegations of willfulness were not included in earlier amendments. Plaintiffs' only "reason[] for not amending sooner" appears to be that the scheduling order's deadline had not yet elapsed. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Given that this motion was filed on the last possible day, which was also the date that fact discovery was scheduled to close, and the delay in filing appears to have been an intentional effort to wait until the last moment, that does not suffice. I find that there was undue delay by Plaintiffs in seeking leave to amend. Leave to amend is denied.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion to compel is **GRANTED IN PART** and **DENIED IN PART** with respect to Plaintiffs. The motion is **DENIED** with respect to Rambus. Plaintiffs' motion to amend is **DENIED**. An appropriate order will be entered.