**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 13-2108-RGA |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| LENOVO HOLDING CO. INC., and LENOVO (UNITED STATES) INC., | ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 13-2109-RGA |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., LG DISPLAY CO., LTD., and LG DISPLAY AMERICA, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DELAWARE DISPLAY GROUP LLC AND INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 13-2112-RGA |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| VIZIO, INC., et al. | ) ) ) | |
| Defendant. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

POTTER ANDERSON & CORROON LLP
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Counsel for Defendants Lenovo Holding Co.
Inc. and Lenovo (United States) Inc.*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
1000 North King Street
Rodney Square
Wilmington, DE  19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendant VIZIO, Inc.*


Dated:  August 26, 2016

ROSS ARONSTAM & MORITZ LLP
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com

*Counsel for Defendants LG Electronics, Inc.,
LG Electronics U.S.A., Inc., LG Display Co.,
Ltd., and LG Display America, Inc.*

2

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF ARGUMENT ...................................................................................1

III.   STATEMENT OF FACTS .........................................................................................2

       A.   The Patents-in-Suit...........................................................................................2

            1.   The '974 Patent ...............................................................................3

            2.   The '370 Patent ...............................................................................3

       B.   Claim Construction ...........................................................................................4

IV.    LEGAL STANDARDS .............................................................................................4

       A.   Summary Judgment Of Invalidity Is Appropriate When There Are No
            Genuine Issues Of Fact ....................................................................................4

       B.   Anticipation.....................................................................................................5

       C.   Obviousness ....................................................................................................6

V.     ARGUMENT.........................................................................................................6

       A.   The '974 Patent is Invalid in View of Niizuma .......................................................6

            1.   Niizuma discloses a panel member entirely received in a tray or
                 housing...........................................................................................7

            2.   Niizuma discloses a pattern of light extracting deformities.......................8

            3.   Niizuma discloses the claimed tray or housing.......................................9

            4.   Niizuma discloses the tray/housing providing support for
                 supporting  and/or positioning a film near the panel member ...................10

       B.   The '370 Patent Is Invalid..................................................................................11

            1.   Kobayashi expressly discloses a panel member having deformities
                 on both sides of the panel in light of the construction of the terms
                 "deformities" and "pattern of light-extracting deformities." .....................13

            2.   Kobayashi discloses a transition region under Mr. Bohannon's

interpretation of claims 13 and 47. ...........................................................17

       3.     Claims 13 and 47 are also obvious over Kobayashi in view of Pristash based on the '370 Patent's prosecution history............................19

VI.    CONCLUSION............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir. 2000)..................................................................................................20

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)..........................................................................................................................6

*Hewlett Packard Co. v. Mustek Sys.*,
340 F.3d 1314 (Fed. Cir. 2003)....................................................................................................6

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004)....................................................................................................5

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)......................................................................................................................6

*Nike Inc. v. Wolverine World Wide, Inc.*,
43 F.3d 644 (Fed. Cir. 1994)........................................................................................................5

*Perricone v. Medicis Pharm. Corp.*,
432 F.3d 1368 (Fed. Cir. 2005)....................................................................................................6

*Schering Corp. v. Geneva Pharms.*,
339 F.3d 1373 (Fed. Cir. 2003)....................................................................................................5

*SmithKline Beecham Corp. v. Apotex Corp.*,
403 F.3d 1331 (Fed. Cir. 2005)....................................................................................................5

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
247 F.3d 1316 (Fed. Cir. 2001)....................................................................................................5

*Upsher-Smith Labs. v. Pamlab LLC*,
412 F.3d 1319 (Fed. Cir. 2005)..................................................................................................19

*TMC Fuel Injection Sys. LLC v. Ford Motor Co.*,
2016 U.S. Dist. LEXIS 53369 (E.D. Pa., April 20, 2016).........................................................19

**Statutes**

35 U.S.C. § 102...............................................................................................................................20

35 U.S.C. § 102(a)............................................................................................................................2

35 U.S.C. § 102(b) .........................................................................................................................1

35 U.S.C. § 103 ...........................................................................................................................20

35 U.S.C. § 103(a) .........................................................................................................................2

35 U.S.C. § 282 ..............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 56(a) .....................................................................................................................5

U.S. Patent No. 5,005,108..............................................................................................................2

U.S. Patent No. 5,408,388..............................................................................................................2

U.S. Patent No. 7,434,974..................................................................................................... *passim*

U.S. Patent No. 7,537,370..................................................................................................... *passim*

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On December 31, 2013, Plaintiffs filed a Complaint alleging infringement by LG Display, Co. Ltd., LG Electronics Inc., VIZIO, Inc., Lenovo Holding Co., Inc. and Lenovo (United States) Inc. (collectively "Defendants") of eight related patents directed to backlights for displays.  (D.I. 1 in Case Nos. 13-cv-2108, 13-cv-2109, and 13-cv-2112.) Most of the originally asserted patents were found either invalid by this Court or the Patent Trial and Appeal Board ("PTAB"), or were voluntarily dismissed from the case by Plaintiffs.  (D.I. 125; D.I. 146; D.I. 162; D.I. 244.)[1] Thus, only two patents remain at issue in this case:  U.S. Patent No. 7,537,370 ("the '370 Patent") and U.S. Patent No. 7,434,974 ("the '974 Patent"). Discovery is now closed, and the parties are in the dispositive and *Daubert* motion stage.

## II.      SUMMARY OF ARGUMENT

Plaintiffs' validity expert, Dr. Kahn, confirms that the asserted claims of the '974 Patent are invalid under 35 U.S.C. §102(b) as anticipated by JP H5-45651to Niizuma ("Niizuma"). In an about-face from the positions he took in his expert report, Dr. Kahn recently testified the following limitations of the '974 Patent asserted claims are disclosed in Niizuma:

- "a tray or housing having a cavity or recess in which the panel member is entirely received" as required by claims 1 and 7 of the '974 patent;

- "wherein the panel member has a pattern of light extracting deformities on or in at least one surface to cause light to be emitted from the light emitting surface of the panel member" as required by claims 1 and 7 of the '974 patent;

- "the tray or housing includes end walls and side walls that act as end edge reflectors and side edge reflectors for the panel member to reflect light that would otherwise exit the

---

[1] All docket citations in this motion are to the consolidated case unless otherwise noted.

panel member through an end edge and/or side edge back into the panel member and toward the pattern of light extracting deformities for causing additional light to be emitted from the light emitting surface of the panel member" as required by claims 1 and 7 of the '974 patent; and

- "wherein the tray or housing provides a support for supporting and/or positioning a film near the panel member" as required by claim 3 of the '974 Patent.

These critical concessions leave no disputed facts as to the invalidity of the asserted claims of the '974 Patent.

Additionally, testimony from both of Plaintiffs' technical experts, Dr. Kahn (validity) and Mr. Bohannon (infringement), demonstrate that all of the asserted claims of the '370 Patent are invalid under 35 U.S.C. §102(a) as anticipated by U.S. Patent No. 5,408,388 to Kobayashi ("Kobayashi"). Moreover, in view of the final written decision from the Patent Trial and Appeal Board with respect to the '370 Patent, claims 13 and 47 are also invalid under 35 U.S.C. §103(a) as obvious over Kobayashi in view of U.S. Patent No. 5,005,108 to Pristash ("Pristash").

As a result, summary judgment should be entered that all of the asserted claims of the '974 Patent and the '370 Patent are invalid.

## III.    STATEMENT OF FACTS

Plaintiffs assert infringement against Defendants based on the sale of displays, or liquid crystal modules (LCMs) used to illuminate displays, containing alleged infringing backlight units (BLUs). (*E.g.*, D.I. 68, ¶ 23.) Plaintiffs allege Defendants' products thus infringe claims 1, 4, 13, 29, and 47 of the '370 Patent, and claims 1, 3-5, 7, and 8 of the '974 Patent. (*E.g.*, Ex. A, Bohannon Rpt. at 13-14.)

### A.    The Patents-in-Suit

The '370 Patent and the '974 Patent are related and share a substantially identical

2

specification.[2] Both patents relate generally to light emitting panel assemblies. (Exs. B-C, at respective Abstracts.) The light emitting panel assemblies each include a "panel member" that receives light from one or more light sources and conducts this light so as to emit it from one or more output areas along the length of the panel. (*Id.* at 1:18-22; 2:58-65.) As discussed below, the claims of the '370 Patent and the '974 Patent differ somewhat in terms of the features.

### 1.    *The '974 Patent*

The '974 Patent discloses light emitting assemblies that feature a panel member received in a cavity or recess of a tray or housing. (Ex. C, '974 Patent at Abstract.) An example of the tray or housing is shown in Fig. 6 of the '974 Patent as element 35 (reproduced below).



With respect to the tray, the '974 Patent explains that:

> FIG. 6 shows another form of light emitting panel assembly 32 in accordance with this invention including a panel member 33, one or more light sources 3, and one or more light output areas 34. In addition, the panel assembly 32 includes a tray 35 having a cavity or recess 36 in which the panel assembly 32 is received. The tray 35 may act as a back reflector as well as end edge and/or side edge reflectors for the panel 33 and side and/or back reflectors 37 for the light sources 3.

(*Id.* at 6:53-60.) According to the '974 Patent, "the tray or housing acts as an end edge and/or side edge reflector for the panel member to reflect light that would otherwise exit the panel member through the end edge and/or side edge back into the panel member for causing additional light to be emitted from the panel member." (*Id.* at Abstract.)

### 2.    *The '370 Patent*

---

[2] Because both patents share the same disclosure, for simplicity (and unless otherwise noted) citations are made to the specification of the '370 Patent only.

3

The '370 Patent discloses light emitting assemblies including an optical panel member in which **both the front and back sides of the panel have a pattern of light extracting deformities that are projections or depressions on or in the sides** and which cause light to be emitted in a predetermined output distribution. (Ex. B, '370 Patent at Abstract (emphasis added).) The pattern of light extracting deformities may have two or more different types or shapes of deformities, and may vary along the length or width of the panel member. (*Id.*)



The '370 Patent distinguishes between "print patterns of light extracting deformities 21" as shown in Fig. 4a, (*Id.* at 5:34-56), and "other light extracting deformities including prismatic surfaces, depressions or raised surfaces" such as those shown in Figs. 4b, 4c, and 4d. (*Id.* at 5:57-6:5.) The '370 Patent also discloses "a transparent film, sheet or plate 27 may be attached or positioned against the side or sides of the panel member from which light is emitted. . . . The member 27 may be used to further improve the uniformity of the light output distribution." (*Id.* at 6:20-26.) The '370 Patent also discloses a transition region. (*Id.* at 2:58-65.)

### B. Claim Construction

The parties agreed to constructions for multiple terms in the '974 and '370 Patents. (D.I. 102, at 11-13.) In addition, the Court construed terms from the '974 Patent and '370 Patent. (D.I. 146, at 3-10.)

## IV. LEGAL STANDARDS

### A. Summary Judgment Of Invalidity Is Appropriate When There Are No Genuine Issues Of Fact

4

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The use of summary judgment is particularly appropriate in complex patent infringement actions. *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994).

Although the movant has the burden of proving invalidity for summary judgment, once the movant sets forth evidence establishing a prima facie invalidity case, the patentee must produce contrary evidence or else invalidity will stand. *See* 35 U.S.C. § 282; *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1320 (Fed. Cir. 2004). The patentee's evidence must create a genuine issue of material fact underlying the invalidity inquiry in order to preclude summary judgment. *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005). However, "[b]road conclusory statements offered by [ ] experts are not evidence and are not sufficient to establish a genuine issue of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) (citations omitted).

## B.    Anticipation

Anticipation requires that a single prior art reference disclose each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379-80 (Fed. Cir. 2003). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline*, 403 F.3d at 1343.

Anticipation cannot be defeated merely because a reference discloses multiple options for a particular feature. "The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are also disclosed." *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) (quoting *Hewlett Packard Co. v. Mustek Sys.*, 340 F.3d 1314,

5

1324 n.6 (Fed. Cir. 2003).

C.     **Obviousness**

An invention is not patentable if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious to a person of ordinary skill in the art at the time the invention was made. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). Obviousness is resolved on the basis of underlying factual determinations including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and, (4) where in evidence, so-called secondary considerations, including commercial success, long-felt but unsolved needs, failure of others, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

V.     **ARGUMENT**

The '974 and '370 Patents are invalid as anticipated and/or obvious over the prior art. At his deposition, Plaintiffs' validity expert, Dr. Kahn, admitted that the only limitations he previously opined were not disclosed in the prior art were in fact disclosed. Accordingly, as discussed below, there is no dispute that the asserted claims of the '974 and '370 Patents are clearly and convincingly invalid.

A.     **The '974 Patent is Invalid in View of Niizuma**

Niizuma anticipates each of the asserted claims of the '974 Patent. There is no dispute that Niizuma is prior art, published on June 18, 1993, two years prior to the alleged priority date of the '974 Patent. (Ex. D, Niizuma, at 1.) Defendants' invalidity expert Dr. Escuti sets forth in his report that Niizuma anticipates claims 1, 3-5, 7, and 8 of the '974 Patent.[3] (Ex. E, Escuti Rpt. at ¶¶315-360.) Plaintiffs do not dispute that Niizuma discloses most of the limitations in the

---

[3] A chart showing the disclosures in Niizuma and Plaintiffs' positions is attached as Exhibit G.

asserted claims. (Ex. F, Kahn Rpt. at ¶¶88-93.) Dr. Kahn disputes only four limitations in the asserted claims (three limitations in independent claims 1 and 7 and one in dependent claim 3). (Ex. F, Kahn Rpt. at ¶¶88-90, ¶91, and ¶92.) However, during his deposition, Dr. Kahn conceded each of these limitations were disclosed in Niizuma.[4]

> 1. *Niizuma discloses a panel member entirely received in a tray or housing*

When he submitted his report, Dr. Khan denied that Niizuma discloses "a tray or housing having a cavity or recess in which the panel member is entirely received" as required by claims 1 and 7 of the '974 Patent. (Ex. F, Kahn Rpt., at ¶¶88-90.) But, during his deposition, Dr. Kahn conceded that the housing in Niizuma entirely receives the panel member and that this limitation was met:

> **Q.** So do you see on the right where 8B, that latching pieces, is going to fit into 7B on the right side of the printed circuit board?
>
> **A.** I do. So it has to touch 7B, and if it did that - - yes, I do see that.
>
> **Q.** So then do you agree with me that when frame 8 is collapsed and fitted to the outer perimeter of holder 5, that the light conductor 4 and the LEDs would not be exposed?
>
> **A.** That is true.
>
> **Q.** And do you agree that the housing created by frame 8 and holder 5 entirely receive light conductor 4?
>
> **A.** It looks that if it did not cover that, it would not be able to attach to receptacles 7B as shown.
>
> **Q. So then you would agree that the housing created by frame 8 and holder 5 entirely receives the light conductor 4?**
>
> **A. That seems to be true.**

---

[4] Kahn also expressly agreed that the following limitations were disclosed in Niizuma: a light emitting panel member referred to as light conductor 4, having a light entrance surface and a light emitting surface, that is placed in a reflective holder, an LCD device, and any type of LEDs. (Ex. H, Kahn Tr. at 95:3-23, 96:19-25, 102:1-4, 106:19-22.)

**...**
    **A. Yes**.

(Ex. H, Kahn Tr. at 110:5-111:1 (emphasis added).) This is seen in the annotated Figs. 1 and 3 of

Niizuma:



(Ex. D, Niizuma at Figs. 1 and 3.) Thus, there is no dispute that Niizuma discloses "a tray or

housing having a cavity or recess in which the panel member is entirely received."

2.    *Niizuma discloses a pattern of light extracting deformities*

Again, when he submitted his report, Dr. Kahn disputed whether Niizuma discloses

"wherein the panel member has a pattern of light extracting deformities on or in at least one

surface to cause light to be emitted from the light emitting surface of the panel member" as

required by claims 1 and 7 of the '974 Patent. (Ex. F, Kahn Rpt., at ¶91.) However, during his

deposition Dr. Kahn again conceded that Niizuma discloses the claimed limitation:

> **Q.** And so do you agree that the finely serrated or ridged grooves covering the entirety of one surface of light conductor 4 would be deformities?
>
> **A.** They would be.
>
> **Q.** And do you agree that they would also form a pattern on the surface of light conductor 4?
>
> **A.** I think according to the Court's definition of "pattern," they would satisfy that.
> …
> **A.** Okay. So he [Niizuma] does talk about it in paragraph 19, and he says "The light" - - in line 4, he says, "The light is reflected out towards the LCD via the serrated or ridged grooves, not shown, formed on the back surface." So      he

8

clearly intends these to be light-emitting deformities, which would satisfy      the Court's definition of "pattern."

…

**Q**. **And so you agree that Niizuma discloses a pattern of light-extracting deformities on a panel member which Niizuma calls the "finely serrated or ridged grooves," correct?**

**A. On the back surface, yes**.

(Ex. H, Kahn Tr. at 112:18-25, 116:24-117:14 (emphasis added).) Thus, there is no dispute that Niizuma discloses "the panel member has a pattern of light extracting deformities on or in at least one surface to cause light to be emitted from the light emitting surface of the panel member."

### 3.      *Niizuma discloses the claimed tray or housing*

In his report, Dr. Kahn disputed whether Niizuma discloses the limitation "the tray or housing includes end walls and side walls that act as end edge reflectors and side edge reflectors for the panel member to reflect light that would otherwise exit the panel member through an end edge and/or side edge back into the panel member and toward the pattern of light extracting deformities for causing additional light to be emitted from the light emitting surface of the panel member" as required by claims 1 and 7 of the '974 patent. (Ex. F, Kahn Rpt., at ¶92.) More specifically, Dr. Khan disputed that the tray had end walls. (*Id.*) However, during his deposition, Dr. Kahn conceded that the light conductor is received in the tray/housing (reflective holder 5) of Niizuma and that it has multiple reflective end walls and side walls:

**A.** He [Niizuma] placed the light guide into a reflective holder yes.
…
**Q.** And would - - would you describe the long sides of holder 5 as the side walls?

 **A.** As the side walls of the holder, yes.

**Q**. And then is it your understanding the short walls of holder 5, those would be the end walls?

**A**. Yes.

9

**Q**. And do you agree that the end walls of holder 5 comprise two short end walls that it labels as 5F?

**A**. Yes. Actually, four - - four short end walls, because it's the left ones and the right ones.

**Q**. Right. So there are two short end walls on one side of holder 5 and 2 on the opposite side of holder 5?

**A**. There's two on each end.

…

**Q**. You agree that holder 5 is reflective, correct? . . .

…

**A**. Well, in paragraph 20 he says that "The holder 5 in which the light conductor is inserted is formed a white compound resin and is flush against the light conductor." And therefore - - it doesn't say "and therefore." It says "it is able to reflect the light leaked form the light conductor to the holder back into the light conductor. And so those portions that he describes would be reflective, and it would reduce the attenuation of light being emitted from the lamps. . . .

**Q**. But Niizuma says holder 5 is reflective, correct?

**A**. Holder 5 is reflective. . . .

**Q**. **So the two long side walls of holder 5, those both reflective, correct?**

**A**. **They're white - - reflective resin.**

**Q**. **And that's the same for the four end walls? They're also reflective?**

**A**. **That's my understanding**.

(Ex. H, Kahn Tr. at 96:24-25, 117:22-120:3 (emphasis added).) Thus, there is no dispute that Niizuma discloses a "tray or housing includ[ing] end walls and side walls that act as end edge reflectors and side edge reflectors for the panel member to reflect light that would otherwise exit the panel member through an end edge and/or side edge back into the panel member and toward the pattern of light extracting deformities for causing additional light to be emitted from the light emitting surface of the panel member" as required by claims 1 and 7.

    4.    *Niizuma discloses the tray/housing providing support for supporting and/or positioning a film near the panel member*

10

The last limitation Dr. Kahn disputed in his expert report is whether the tray or housing "provides a support for supporting and/or positioning a film near the panel member," required by claim 3 of the '974 Patent. (Ex. F, Kahn Rpt. at ¶93.) However, during his deposition, Dr. Kahn admitted that light diffusing film 3 is positioned near the light conductor 4 and light diffusing film 3 is positioned by elements 5F of the tray.

**Q. Well, do you agree that film 3 is near light conductor 4 in Figure 3?**

**A. It's drawn that way, yes**.

**Q**. And do you agree that elements 5F are part of the holder 5?

**A.** Those are part of the holder 5.

**Q.** And would you agree that those tabs 5F are positioning the film near the panel member labeled as light conductor 4?

**A.** I believe they are positioning the film . . . .

(Ex. H, Kahn Tr. at 122:19-123:3 (emphasis added).)

Q. **[Y]ou agree that the tabs 5F are positioning film 3 near the light conductor 4?**

**A. They provide a positioning function, yes**.

(Ex. H, Kahn Tr. at 124:25-125:2 (emphasis added).) Thus, there is no dispute that Niizuma discloses the limitation that "the tray or housing provides a support for supporting and/or positioning a film near the panel member" as required by claim 3.

Therefore, there is no dispute that Niizuma anticipates all the asserted claims of the '974 Patent and judgment of invalidity should be entered.

### B.     The '370 Patent Is Invalid

In view of the testimony of Plaintiffs' experts and the '370 Patent's prosecution, all of the asserted claims on the '370 Patent are invalid. An *inter partes* review Final Written Decision by

11

the PTAB, found that all limitations of the '370 Patent claims 15 and 27 were taught by Pristash and Kobayashi in view of Pristash. (Ex. I, IPR2014-01096, Paper 40, Dec. 18, 2015 ("FWD"), at 24.) Claims 15 and 27 of the '370 Patent are nearly identical to the independent claims 1, 13, 29, and 47 the '370 Patent except for the limitations requiring different types of deformities on both sides of the panel member. (Ex. J, Table comparing claim language.) Accordingly, the PTAB's findings show that all the limitations of claims 1, 13, 29, and 47 are taught by Pristash and Kobayashi in view of Pristash except for the following specific limitations:

> *both the front and back sides* [of the panel member] having a pattern of light extracting deformities ('370 Patent at Claims 1, 13, 29, 47) (emphasis added)

> at least some of the light extracting deformities on or in one of the sides *are of a different type* than the light extracting deformities on or in the other side of the panel member ('370 Patent at Claims1 and 13) (emphasis added)

> at least some of the light extracting deformities on or in one of the sides *vary in a different way or manner* than the light extracting deformities on or in the other side of the panel member ('370 Patent at Claims 29, 47) (emphasis added).

(Ex. B,'370 Patent at Claims 1, 13, 29, 47.) Thus, any alleged novelty is found in these limitations alone.

However, as discussed below, each of these limitations were known in the prior art[5] and thus each of the asserted claims of the '370 Patent are invalid. Defendants' invalidity expert Dr. Escuti sets forth in his report that Kobayashi and Pristash invalidate claims 1, 4, 13, 29, and 47 of the '370 Patent.[6] (Ex. E, Escuti Rpt. at ¶¶602-651, 703-722.) Moreover, based on Plaintiffs' own admissions made to assert infringement (Ex. M, Bohannon Tr. at 125:8-125:24; 190:20-191:14;

---

[5] Dr. Kahn does not dispute that Kobayashi discloses the latter two limitations. (Ex. F, Kahn Rpt. at ¶¶168-180.)

[6] A chart showing the disclosures in Kobayashi and Pristash and Plaintiffs' position is attached as Exhibit K.

Ex. N, Bohannon Reply at 95-96), all of the asserted claims of the '370 patent are anticipated by Kobayashi – Plaintiffs cannot contend that elements they identify in Defendants' products meet the claim limitations but then turn a blind eye to those same elements in Kobayashi (Ex. L, Kobayashi at Figs. 1-2; 4:25-29.) Additionally, all the asserted claims are invalid as obvious over Kobayashi in view of Pristash in view of the PTAB's Final Written Decision. FWD at 20-21.

**1.** ***Kobayashi expressly discloses a panel member having deformities on both sides of the panel in light of the construction of the terms "deformities" and "pattern of light-extracting deformities."***

Kobayashi depicts a panel member (light-guide plate **2**) with prismatic cuts **21** on one side and light-reflecting spots **22** on the other side as shown in Figs. 1 and 2 of Kobayashi provided below.[7] Both of Plaintiffs' experts agree that prismatic cuts 21 and spots 22 are deformities as claimed in the '370 Patent. (Ex. M, Bohannon Tr. at 125:8-125:24; 190:20-191:14; Ex. H, Kahn Tr. at 196:25-197:20, 193:4-8, 192:6-8, 192:18-193:3.)



(Ex. L, Kobayashi at Figs. 1-2.) First, Plaintiffs' infringement expert Mr. Bohannon opined that the accused products infringe the asserted claims of the '370 Patent because he contends the claimed "pattern of light extracting deformities" in the accused products are in the form of patterns of "circular deformities" or "circle shapes" and "linear deformities" or "linear shapes"

---

[7] Dr. Kahn admits Kobayashi discloses a light source, panel member with an input edge, front and back sides, and a greater cross-sectional width than thickness. (Ex. H, Kahn Tr. at 189:7-190:2.)

on both sides of the panel members. (Ex. M, Bohannon Tr. at 125:8-125:24; 190:20-191:14.)

Plaintiffs' only support for identifying these deformities are two-dimensional pictures of the panels, such as those below:



(*E.g.*, Ex. N, Bohannon Reply at 95-96.) Based on Mr. Bohannon's interpretation, the similar linear shapes on one side of Kobayashi's panel and the circular shapes on the other side are the claimed "both the front and back sides [of the panel member] having a pattern of light extracting deformities that are projections or depressions" as required by all the asserted claims. This is starkly illustrated below – Plaintiffs' "evidence" of alleged infringement of this element in the '370 Patent in the right figure below is matched by those features being found in Kobayashi in the left figure below.



(Ex. L, Kobayashi, at Fig. 2; Ex. N, Bohannon Reply, at 96.)

Plaintiffs' validity expert, Dr. Kahn, provided similar testimony with respect to the prior art. Dr. Kahn admitted that one side of the panel member (light-guide plate **2**) in Kobayashi has

14

prismatic deformities:

> **Q.** Going back to prismatic cuts 21, do you agree that those are deformities?
>
> **A.** I do.  Now, the only question is I want to look at this and see whether they were on the light guide plate or on a second plate.
>
> **Q.** Sure.  And I'll direct you again in column 4, Kobayashi.
>
> **A.** Okay.  Thank you.
>
> **Q.** Do you see where it says, "The front portion of the light-transmitting plate 2 has prismatic cuts 21"?
>
> **A.** Okay.
>
> **Q. So do you agree that the prismatic cuts on the front portion of the light-transmitting plate are deformities on or in the surface of light-guiding plate 2?**
>
> **A.  Yeah.  So each of the prismatic cuts on the front portion of the light-transmitting plate has a triangular cross-section, and it extends between the side surfaces.**

(Ex. H, Kahn Tr. at 196:25-197:20 (emphasis added).) In Dr. Kahn's expert report, he argued that the spot-shaped reflecting layers **22** shown above are not projections or depressions and so cannot be a deformity. (Ex. F, Kahn Rpt., at ¶¶170-174.) Contrarily, in his deposition, Dr. Kahn admitted that spot-shaped reflecting layers **22** were indeed projections:

> **Q.**    My question was, the light-reflecting spots 22 would have at least some height on the surface of light-transmitting plate 2 in Kobayashi, correct?
>
> **A.**    On a microscopic scale, yes.
> …
> **Q.**    But they're not completely flat, correct?
>
> **A.    Well, there's presumably some depth to them.**

(Ex. H, Kahn Tr. at 193:4-8; 192:6-8; (emphasis added).) Figure 1 of Kobayashi shown above depicts the spot-shaped reflecting layers **22** protruding from the light guide and having at least some thickness.  Accordingly, these coatings have a thickness to them that serve as protrusions.

15

(Ex. O, Escuti Reply, ¶86.) Moreover, and dispositive on this point, Plaintiffs' expert Mr. Bohannon agrees:

> **Q.** Now, going back to the claim language we were just talking about, "The light extracting deformities that are projections or depressions on or in the sides of the panel member." Is there a distinction in your mind if a deformity is on versus in the panel member?
>
> **A.** Well, it's – it's – you know, if it's a projection, you should be able to feel it or see a height above the surface. A projection or depression is going to be below the surface. And I'm sure we can argue for days about what "on" or "in" means. **But a projection or depression is pretty clear. I attached a dictionary definition of "projection or depression" to my report, and we can see that. It's up or down from a surface.** Whether it's on or in, I'll leave it to the lawyers.

(Ex. M, Bohannon Tr. at 112:12-113:6 (emphasis added).) Dr. Kahn also agreed:

> **Q.** So in your opinion, the spot-shaped reflecting layers on the light-transmitting plate 2 would not cause any light to be emitted?
>
> **A.** I think the modification they d[o] to light would be due to their reflectivity but not due to their height.
>
> **Q.** But you would agree that they do have some height on the surface, correct?
>
> **A.** The height would have essentially no significant defect on the directionality of the light.

(Ex. H, Kahn Tr. at 192:18-193:3.)

Dr. Kahn also testified that a circular shaped deformity that has some height necessarily deflects light. (Ex. H, Kahn Tr. at 155:11-156:2.) The agreed upon construction for the claim term deformities is "any change in the shape or geometry of a surface and/or coating or surface treatment that *causes a portion of the light* to be emitted." (D.I. 102 at 12.) Thus, regardless of how significantly the spots deflect the directionality of the light, Dr. Kahn's interpretation meets the agreed construction of deformities only requiring a portion of the light to be emitted. Indeed, Mr. Bohannon opined in the context of infringement that circular shapes on the surface of the panels in the accused products are deformities that cause at least a portion of the light to be

16

emitted. (*E.g.*, Ex. A, Bohannon Rpt. at 135.) Thus, there is no dispute that Kobayashi discloses different types of deformities on both sides of the panel member.

Additionally, both of Plaintiffs' experts agree that circular shapes on one side of a panel and linear shapes on the other side constitute two different types of deformities. (Ex. M, Bohannon Tr. at 140:9-140:2; Ex. H, Kahn Tr. at 154:15-155:10.) As shown in the pictures above, Mr. Bohannon identified the circular shapes on one side of the panel and the linear shapes on the other side as the different types of deformities in the accused products. In his deposition, Mr. Bohannon confirmed this and explained the difference between deformities of a "different type":

> **Q.** Now, how, if at all, does varying the deformities in a different way or manner – how is that different than having the deformities vary by type as in claim one?
>
> **A.** Well, for example, the pictures that we've been looking at here, you see there's linear deformities on the top which act kind of like a Fresnel lens. But I don't want to be held to that. But it's kind of what it appears to be. And the light extracting deformities on the back are extracting the light. **So there's clearly circular deformities on one side and linear deformities on the other side**.
>
> **Q.** And would you say that **those are different types** of deformities?
>
> **A. Yes**.

(Ex. M, Bohannon Tr. at 140:9-140:2 (emphasis added).) As shown above, Kobayashi similarly discloses circular shapes on one side and linear shapes on the other side of the light transmitting plate 2. (Ex. L, Kobayashi at Figs. 1-2.) Thus, there is no dispute that Kobayashi discloses different types of deformities on both sides of the panel as required by claims 1 and 13 of the '370 Patent.

### 2. *Kobayashi discloses a transition region under Mr. Bohannon's interpretation of claims 13 and 47.*

To identify a putative transition region in Defendants' products, Plaintiffs' expert asserts

that the transition region in claims 13 and 47 is the region between the input edge and the start of the deformities on the back side of the panel member (the start of the circular shaped deformities). (*E.g.*, Ex. N, Bohannon Reply at 100.) As shown below, the transition region, according to Mr. Bohannon, overlaps with the linear shapes on the front surface of the panel.



(*E.g.*, Ex. N, Bohannon Reply at 100.) And, according to Mr. Bohannon, the linear shapes in this region, are the claimed optical elements. (Ex. M, Bohannon Tr. at 289:8-11.) This same structure, however, is found in Kobayashi. Thus, according to Plaintiffs' and Mr. Bohannon's admission, Kobayashi discloses an identical transition region with optical elements.



(Annotated Figs. 1, 2 of Kobayashi depicting the transition region; cf. Ex. E, Escuti Rpt. at ¶¶639-641.)

The green highlighted portion above in Fig. 2 illustrates a region of light transmitting plate 2 between the input edge and where light-reflecting spots start. According to Mr. Bohannon,

18

this would be the claimed transition region. (Ex. N, Bohannon Reply at 100.) As shown above in Fig. 1, this region includes the prismatic cuts 21 (*i.e.*, linear shapes) on the front surface. According to Mr. Bohannon, these would be the claimed optical elements in the transition region. (Ex. M, Bohannon Tr. at 289:8-11.) Thus, applying Mr. Bohannon's interpretation of the transition region and optical elements that he applies to the accused products to Kobayashi, there is no dispute that Kobayashi discloses the same transition region with optical elements. After all, subject matter which would infringe a patent after the issue date of the patent would invalidate the patent if that subject matter was prior art to the patent. *Upsher-Smith Labs. v. Pamlab LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (collecting cases).

**3.  *Claims 13 and 47 are also obvious over Kobayashi in view of Pristash based on the '370 Patent's prosecution history.***

To the extent the Court rejects Mr. Bohannon's interpretation of the claimed transition region and optical elements, claims 13 and 47 are still invalid as obvious over Kobayashi in view of Pristash based on the PTAB's Final Written Decision in IPR2014-01096.  (Ex. I, IPR2014-01096, FWD.)

Dr. Kahn's invalidity opinion that Kobayashi in view of Pristash fails to disclose a transition region should be disregarded because he ignored the '370 Patent's prosecution history. In both his report and deposition, Dr. Kahn challenges that Kobayashi in view of Pristash discloses the light emitting panel assembly containing a transition region. (*See, e.g.,* Ex. F, Kahn Rpt., at ¶¶175-180, 274.) However, as confirmed by the PTAB's final written decision, Pristash discloses the claimed transition region with optical elements. (Ex. I, FWD at 20-21.) Dr. Kahn failed to consider the PTAB's final written decision, which is part of the '370 Patent's prosecution history. (Ex. H, Kahn Tr. at 222:5-17) *See TMC Fuel Injection Sys. LLC v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 53369, *6-*7 (E.D. Pa., April 20, 2016) (using PTAB's inter

19

partes review decision in granting summary judgment of non-infringement and explaining "[d]istrict courts generally give deference to PTAB *inter partes* review decisions based on the PTAB's specialized patent knowledge and expertise" (citations omitted).) Instead, Dr. Kahn makes the same arguments that the PTAB rejected in finding Pristash disclosed the claimed transition region. (*Compare* Ex. I, FWD at 20-21, with, *e.g.*, Ex. F, Kahn Rpt. at ¶¶190-197.) Dr. Kahn cannot, however, create an issue of fact *ipse dixit*, especially when he failed to even consider the underlying intrinsic evidence. *See*, *e.g.*, *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1046-48 (Fed. Cir. 2000).

The PTAB also agreed it would have been obvious to combine Pristash with Kobayashi. (Ex. I, FWD at 24.) Accordingly, there cannot be a genuine dispute between the parties regarding whether Kobayashi in view of Pristash discloses the transition region with optical elements limitation.[8]

Thus, judgment of invalidity should be entered because Kobayashi alone or Kobayashi in view of Pristash discloses every limitation of the Asserted Claims of the '370 Patent.

## VI.    CONCLUSION

For the above reasons, the asserted claims of the '974 Patent are invalid under 35 U.S.C. § 102 and the asserted claims of the '370 Patent are invalid under 35 U.S.C. §§ 102 and 103.

---

[8] Patent Owner did not appeal this decision and the time for such an appeal has run. Thus, the FWD is final.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:                                    */s/ Benjamin J. Schladweiler*
                                                  David E. Ross (#5228)
Jamie B. Beaber                                   Benjamin J. Schladweiler (#4601)
Kfir B. Levy                                      100 S. West Street, Suite 400
Baldine B. Paul                                   Wilmington, DE  19801
Anita Y. Lam                                      (302) 576-1600
Alison T. Gelsleichter                            dross@ramllp.com
Tiffany A. Miller                                 bschladweiler@ramllp.com
Michael L. Lindinger
Saqib J. Siddiqui                                 *Counsel for Defendants LG Electronics, Inc.,*
Michael J. Word                                   *LG Electronics U.S.A., Inc., LG Display Co.,*
MAYER BROWN LLP                                   *Ltd., and LG Display America, Inc.*
1999 K Street NW
Washington, D.C.  60606
(202) 263-3000
jbeaber@mayerbrown.com
klevy@mayerbrown.com
bpaul@mayerbrown.com
alam@mayerbrown.com
agelsleichter@mayerbrown.com
tmiller@mayerbrown.com
mlindinger@mayerbrown.com
ssiddiqui@mayerbrown.com
mword@mayerbrown.com

Robert G. Pluta
Amanda K. Streff
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL  60606
(312) 782-0600
rpluta@mayerbrown.com
astreff@mayerbrown.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Of Counsel*:

GIBSON, DUNN & CRUTCHER LLP

Jason C. Lo
Raymond A. LaMagna
Jeffrey G. Lau
333 South Grand Avenue
Los Angeles, CA  90071-3197

Cassandra Gaedt-Sheckter
1881 Page Mill Road
Palo Alto, CA  94304-1211

 */s/ Pilar G. Kraman*
Adam W. Poff (#3990)
Pilar G. Kraman (#5199)
1000 North King Street
Rodney Square
Wilmington, DE  19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendant VIZIO, Inc.*


POTTER ANDERSON & CORROON LLP

*Of Counsel*:

VINSON & ELKINS LLP

Fred I. Williams
Jonathan Hardt
Mario A. Apreotesi
2801 Via Fortuna, Suite 100
Austin,  TX 78746-7568
(512) 542-8400

Todd E. Landis
Eric J. Klein
2001 Ross Avenue, Suite 3700
Dallas, TX  75201-2975
(214) 220-7700

 */s/ Stephanie E. O'Byrne*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Counsel for Defendants Lenovo Holding Co.
Inc. and Lenovo (United States) Inc.*


Dated:  August 26, 2016

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on August 26, 2016, I caused the

foregoing *Defendants' Opening Brief in Support of Their Motion for Summary Judgment of*

*Invalidity* to be served via electronic mail upon the following counsel of record:

Joseph J. Farnan, Jr.
Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Delaware*
*Display Group LLC and Innovative*
*Display Technologies LLC*

Jeffrey R. Bragalone
Patrick J. Conroy
Justin B. Kimble
Daniel F. Olejko
T. William Kennedy, Jr.
Stephanie R. Wood
BRAGALONE CONROY P.C.
Chase Tower
2200 Ross Avenue, Suite 4500W
Dallas, TX 75201
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
jkimble@bcpc-law.com
dolejko@bcpc-law.com
bkennedy@bcpc-law.com
swood@bcpc-law.com

*Counsel for Plaintiffs Delaware*
*Display Group LLC and Innovative*
*Display Technologies LLC*


 */s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)