# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DELAWARE DISPLAY GROUP LLC
AND INNOVATIVE DISPLAY
TECHNOLOGIES LLC

        Plaintiffs,

        v.

VIZIO, INC., et al.,

        Defendant.

C.A. No. 13-2112-RGA

REDACTED - PUBLIC VERSION

## DEFENDANT VIZIO, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,537,370

GIBSON, DUNN & CRUTCHER LLP
Jason C. Lo
Raymond A. LaMagna
Jeffrey G. Lau
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
jlo@gibsondunn.com
rlamagna@gibsondunn.com
jglau@gibsondunn.com

Cassandra Gaedt-Sheckter
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5300
cgaedt-sheckter@gibsondunn.com

Dated: August 26, 2016

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for VIZIO, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................... 1

II. NATURE AND STAGE OF PROCEEDINGS ........................................................................ 2

III. UNDISPUTED FACTS ...................................................................................................... 3

IV. LEGAL STANDARDS ....................................................................................................... 5

     A.    Infringement ............................................................................................................. 5

     B.    Summary Judgment ................................................................................................. 5

V. ARGUMENT ..................................................................................................................... 6

     A.    Plaintiffs Have No Evidence that Any of the Spots on the Back of Any Accused Panels Constitute "Depressions or Projections" as Required in All Asserted Claims .................................................................................................. 6

     B.    The Alleged Patterns of Deformities Do Not "Vary" Along the Length or Width of the Panel Member" as Required in Every Asserted Claim (Nos. 1, 13, 29, 47) ........................................................................................................... 9

     C.    The Alleged Deformities on the Front and Back of Panel Members Do Not "Vary in a Different Way or Manner" From Each Other As Required by Claims 29, 47 ........................................................................................................ 12

     D.    The Panel Members of the Accused VIZIO Products Do Not Have Transition Regions as Required by Claims 13 and 47, or Optical Elements in Those Regions ..................................................................................................... 13

          1.    The Undisputed Facts Evidence that Claims 13 and 47 Are Not Satisfied ........................................................................................................ 13

          2.    Plaintiffs Cannot Rely on the Doctrine of Equivalents to Avoid Judgment ................................................................................................... 15

     E.    Plaintiffs Provide No Evidence Concerning Claim 8 of the '370 Patent ............. 16

VI. CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)..................................................................................................14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................5, 6, 10, 12

*ART+COM Innovationpool GmbH v. Google Inc.*,
155 F. Supp. 3d 489 (D. Del. 2016)..................................................................................6, 12

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
216 F.3d 1042 (Fed. Cir. 2000)..................................................................................6, 10, 12

*Aylus Networks, Inc. v. Apple, Inc.*,
13-cv-04700-EMC, 2016 WL 270387 (N.D. Cal. Jan. 21, 2016) (N.D. Cal.
Jan. 21, 2016), *appeal filed Aylus Networks, Inc. v. Apple Inc.* (Fed. Cir.
February 22, 2016)..................................................................................................8, 9

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
359 F.3d 1367 (Fed. Cir. 2004)..................................................................................11

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
6:13-CV-507, 2015 WL 3464733 (E.D. Tex. June 1, 2015) ......................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................5

*Every Penny Counts v. Am. Express Co.*,
563 F.3d 1378 (Fed.Cir.2009)..................................................................................6

*Exigent Tech., Inc. v. Atrana Sols.*,
442 F.3d 1301 (Fed. Cir. 2006)..................................................................................5

*Gen. Am. Transp. Corp. v. Cryo–Trans, Inc.*,
93 F.3d 766 (Fed.Cir.1996)..................................................................................11

*K-TEC, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012)..................................................................................6, 10, 12

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
177 F.3d 968 (Fed. Cir. 1999)..................................................................................10

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005)..................................................................................11

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)......................................................................................6, 10, 12

*Network Commerce, Inc. v. Microsoft Corp.*,
    422 F.3d 1353 (Fed. Cir. 2005)...............................................................................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011).................................................................................................5

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................5

Fed. R. Civ. P. 56(e) ....................................................................................................................5

**Other Authorities**

U.S. Patent No. 7,537,370...................................................................1, 2, 3, 6, 8, 9, 10, 11, 13, 16

## I.  INTRODUCTION

Plaintiffs assert that VIZIO infringes U.S. Patent No. 7,537,370.  The '370 patent claims backlights that have panels with light emitting deformities that are "projections or depressions" on both their front and back sides, along with specified variation among those deformities.  But no facts exist to show that multiple of the required deformity or variation limitations are met here.  To the contrary, repeatedly, the undisputed facts show that key limitations **do not exist** in VIZIO's products.  Plaintiffs expert, however, ignores these facts, parrots back the language of the claim, and states ipse dixit and without factual support that these limitations are met.

First, Plaintiffs set forth no evidence that the alleged deformity spots on the backs of accused panels are "projections or depressions" as required in every asserted claim.  In fact, during IPR proceedings, Plaintiffs urged the PTAB to reject prior art on the basis that deformities (such as those shown by Plaintiffs on the accused panels here) are not necessarily projections or depressions as required, such that, absent evidence to the contrary, the claim element is not satisfied.  And the PTAB followed Plaintiffs' direction and rejected the art.  Yet, Plaintiffs have no evidence to show that this limitation is met here.  Applying Plaintiffs' own standard, there is no evidence that the spot-type deformities constitute projections or depressions in VIZIO's panels.  As such, VIZIO is entitled to summary judgment on all claims and for all products.

Second, the accused panels do not meet the requirement that, on at least one side, the deformity pattern must "vary" along the length or width.  The alleged deformity patterns on the majority of the accused panels are equally spaced throughout and do not vary.  The remaining panels feature alleged deformities for which Plaintiffs have not even identified a pattern, much less one that varies.  This limitation is in all claims, such that judgment in full is also appropriate.

Third, claims 29 and 47 require that the deformities on the front and back of the panels "vary in a different way or manner" from each other.  But, the alleged deformities on the front of the accused panels have no variation at all.  Thus, they do not "vary" as required.  This provides an independent basis to grant judgment in favor of VIZIO on claims 29 and 47.

Fourth, claims 13 and 47 require a "transition region," which is defined in the '370 patent as a part of the panel near its edge where no deformities are present on either the front or back.  But, in the accused VIZIO products, there is no such region—the alleged deformities on the front of the panel run from edge to edge covering the entire panel surface.  This provides yet another independent basis to grant judgment in favor of VIZIO on claims 13 and 47.

In sum, VIZIO presents multiple grounds on which Plaintiffs have not shown and cannot now show that VIZIO's accused products meet the limitations of the '370 patent.  Thus, as summarized above, VIZIO provides multiple independent bases for summary judgment.

## II.  NATURE AND STAGE OF PROCEEDINGS

In this patent litigation, Plaintiffs assert that VIZIO infringes claims 1, 4, 8, 13, 29, 47 of the '370 patent.  Plaintiffs' technical expert, Mr. William Bohannon, served a report presenting Plaintiffs' evidence of alleged infringement on May 18, 2016.  *See* Ex. A and accompanying claim charts A-1 to A-8.  VIZIO's technical expert, Mr. Thomas Credelle, served a response on June 21.  *See* Ex. B.  Mr. Bohannon served a reply on July 15, Ex. C, and was deposed on August 3 and 4, Exs. D, E.  Mr. Credelle was deposed on August 10, Ex. H, and Plaintiffs' other technical expert on validity, Dr. Frederic Kahn, was deposed on August 11 and 12, Exs. I, J.  Expert discovery ended on August 12 and trial is scheduled for March 13, 2017.  D.I. 208, 232.

### III.  UNDISPUTED FACTS

The '370 patent claims "light emitting panel assemblies" that feature "an optical panel member" on which "**both** the front and back sides hav[e] a pattern of light extracting deformities that are projections or depressions."  Ex. F at claims 9, 13, 29, 47 (emphasis added).  Differences in claim language among the asserted claims are illustrated in Exhibit G for convenience.

Mr. Bohannon asserts that eight VIZIO products allegedly infringe the '370 patent: M3D421SR, M420KD, M420SV, M501d-AR2, M551d-A2, M3D550SL, E291i-A1, M471-A2. Ex. A at 17.  The results and facts of his investigation were provided to VIZIO with his report in "teardown charts" TD-31 to TD-38, provided here as Exhibits A1 to A8 respectively.

The bottoms of the panels in each of the accused VIZIO products feature spots, as illustrated in Mr. Bohannon's charts.  *See* Exs. A-1 to A-8, typically pp. 12, 21, 30, 38.  *E.g.*:



Back of Optical Panel Member
Top (near LEDs) at 20x



Back of Optical Panel Member
Bottom  (away from LEDs) at 20x

Ex. A-2 at 12, 21, 30, 38.

Mr. Bohannon provided no measurements in his report or supporting materials characterizing the relative size or placement of these features, (*e.g.*, their width, depth, height, or pitch, etc.).  The "the center-to-center distance" of these spot features—that is, their pitch—does not vary along either the length or width of the panel member for five of the eight accused products—E291i-A1, M420KD, M3D421SR, M420SV, and M3D550SL.  Ex. B ¶¶ 125–128; Ex. H at 40:7–41:9.

The front of the panels in each of the accused products features a linear shape, *i.e.*, stripes, as illustrated in claim charts TD-31 to TD-38 (Exs. A-1 to A-8 here)[1]:



| M3D421SR Ex. A-1 at 31, 39 | M420KD Ex. A-2 at 31, 39 | M420SV Ex. A-3 at 31, 39 |
| M501d-A2R Ex. A-4 at 31, 39 | M551d-A2 Ex. A-5 at 31, 39 | M3D550SL Ex. A-6 at 32, 41 |
| E291i-A1 Ex. A-7 at 22 | M471i-A2 Ex. A-8 at 31, 39 | |

As shown above, these stripes form parallel lines of equal pitch. And, as Plaintiffs' expert also agrees, these stripes "run the full length and/or width of the front side" of the panel. *See* page 15 of Exs. A-1 to A-8. Mr. Bohannon further confirms this fact in photographs that, in

---

[1]    The spots shown in some of the photographs here are on the reverse back side of the panel, which is transparent. Neither party contends that spot features are on the front of the panels.

his words, show "stripes on [the] front side" of each accused panel running to the edge of the

panel. *See* pages 24 and 41 of Exs. A-1 to A-8, for example:



Ex. A-2 at 24, 41; *cf*. Ex. B ¶133 (confirming stripes "run the full length of the light guide, edge to edge").

Thus, these linear stripes run the full length and width of the front of the accused panels.

## IV.  LEGAL STANDARDS

### A.    Infringement

"To prove infringement, the plaintiff bears the burden of proof to show the presence of

every element or its equivalent in the accused device." *Uniloc USA, Inc. v. Microsoft Corp.*, 632

F.3d 1292, 1301 (Fed. Cir. 2011).  For summary judgment on noninfringement, "nothing more is

required than the filing of a summary judgment motion stating that the patentee had no evidence

of infringement and pointing to the specific ways in which accused systems did not meet the

claim limitations." *Exigent Tech., Inc. v. Atrana Sols.*, 442 F.3d 1301, 1308–09 (Fed. Cir. 2006).

### B.    Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the

evidence establishes that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party bears the initial burden to show there is no genuine issue of

material fact and that it is entitled to judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986).  The burden then shifts to the opposing party, who "must set forth specific facts showing

5

that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Thus, to avoid judgment, the non-moving party must produce evidence of sufficient caliber to support judgment in its favor. *See Anderson*, 477 U.S. at 252.

Such evidence must be real and substantial—not merely colorable. *Id.* at 249–50; *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements."). Unsupported, conclusory expert assertions do not create a genuine issue of material fact to avoid judgment. *See, e.g.*, *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1374 (Fed. Cir. 2012); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("[A]n expert's unsupported conclusion on the ultimate issue of infringement is insufficient….").

It is a court's role "to ensure that questions of the scope of the patent claims are not left to the jury." *See ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 507 (D. Del. 2016) (quoting *Every Penny Counts v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed.Cir.2009)). Thus, disputes depending on claim construction are especially appropriate for summary judgment. *Id.* (addressing claim construction issue on summary judgment because "the court must see to it that disputes concerning the scope of the patent claims are fully resolved.").

## V.  ARGUMENT

### A.    Plaintiffs Have No Evidence that Any of the Spots on the Back of Any Accused Panels Constitute "Depressions or Projections" as Required in All Asserted Claims

To demonstrate that the accused panels feature deformities that are "projections or depressions" as required by the claims (versus being effectively flat), Plaintiffs would need to supply evidence, such as measurements. But Plaintiffs did not.

As Plaintiffs urged to the PTAB during the copending IPRs, spot-type deformities do not necessarily constitute projections or depressions. But every asserted '370 patent claim requires

that deformities specifically be of the "projection[] or depression[]" subtype. *See* Ex. F at 9:13–15, 9:56–58, 11:9–11, 12:24–26. During the IPRs, Plaintiffs urged the PTAB to reject prior art showing spot deformities where specific evidence or measurements were not also proffered to show that the spots were "projections or depressions." The PTAB followed Plaintiffs' request and excluded art on that basis. Yet here, Plaintiffs themselves put forward no evidence to show that the "depressions or projections" limitation is met. Instead, Mr. Bohannon merely shows a flat picture of alleged deformities, parroting back the claim language by stating ipse dixit that the deformities "are projections or depressions." *E.g.*, pp. 11, 20, 29, 37 of Exs. A-1 to A-8.

In IPR 2014-01096, the Petitioner argued that "spot shaped reflective layers" (*e.g.*, of white paint or metal vapor deposition) in prior art constituted "depressions or projections." The PTAB, however, disagreed, ruling that, while such spots are deformities under a construction consistent with that applied in this case, this alone did not show that "the spot-shaped reflecting layers . . . [also] qualify as projections or depressions.'" Ex. K at 13–14 [Paper No. 11 (Jan. 13, 2015)]. The showing in the IPR was similar to Mr. Bohannon's showing here, for example:



Comparison of Ex. A-2 at 11, with Ex. K at 13 (Kobayashi, Fig. 2)

Thus, based on the evidence before it, the PTAB held that such deformities were not necessarily "projections or depressions" and did not set forth a "likelihood that the element was met." *See* Ex. K at 14 (denying petition). (In this case, however, additional evidence is presented concerning this reference, per Defendants' joint motion for summary judgment of invalidity.)

Subsequently, in IPR2015-01867, Plaintiffs cited and relied on this ruling to urge the PTAB to reject Ground 1 in that Petition (also the Kobayashi reference).  Ex. L at 13–14 [Paper 11 (Dec. 22, 2015)].  The PTAB expressly relied on and accepted Plaintiffs' argument, denying institution on Ground 1 on that basis.  Ex. M at 9, 11 [Paper 15 (Mar. 17, 2016)].  Thus, Plaintiffs' urging of this argument—that identifying spot-type deformities is insufficient to show the requirement of being a "projection or depression"—provided Plaintiffs with a substantial benefit:  the IPR review of the '370 patent against the Kobayashi reference was not instituted.

As a matter of equity and estoppel, Plaintiffs cannot now argue that all spot-type deformities constitute depressions or projections, or that evidence is not required to prove that spot deformities meet the depression/projection requirement.  Plaintiffs are bound by the position they urged in the IPR.[2]  Plaintiffs and Mr. Bohannon cannot merely identify spot elements on panels in VIZIO products (*e.g*., in a flat photograph) and contend that this is sufficient to evidence infringement while prevailing on the opposite and narrower position at the PTAB.

Mr. Bohannon has done no more here (indeed less) than the proffer of evidence in the IPRs.  Applying the yardstick and construction here that Plaintiffs urged the PTAB to apply, Mr. Bohannon has no evidence to show that the spot-type elements on the back of the panels in VIZIO's accused products constitute deformities that are "projections or depressions."  Accordingly, VIZIO is entitled to summary judgment of non-infringement on the '370 patent.

This is similar to the dispute in *Aylus Networks, Inc. v. Apple, Inc*., 13-cv-04700-EMC, 2016 WL 270387, at *1 (N.D. Cal. Jan. 21, 2016) (N.D. Cal. Jan. 21, 2016), *appeal filed Aylus Networks, Inc. v. Apple Inc.*, (Fed. Cir. February 22, 2016).  There, the Court held that the

---

2    *See, e.g*., *Cellular Commc'ns Equip. LLC v. HTC Corp.*, 6:13-CV-507, 2015 WL 3464733, at *6 (E.D. Tex. June 1, 2015) ("Plaintiff may not now obtain a broader construction than the position it advocated to the PTAB.")

8

patentee's statements to the PTAB to avoid institution of an IPR were "akin to a prosecution disclaimer" such that "[t]he patentee is held" to his argument. *Id*. at \*5 (quote omitted). There, like here, based on the statements made by the patentee to the PTAB, the IPR was not instituted on the grounds at issue. *Id*. The district court then held the patentee to that position. *Id*. at \*5–6. No different result should apply here. Plaintiffs and Mr. Bohannon cannot sustain a showing that the "projection or depression" limitation is satisfied based on "evidence" similar to or even less than what Plaintiffs successfully encouraged the PTAB to reject as insufficient.

As Plaintiffs urged in the IPRs, all spot type deformities are not projections or depressions, and Plaintiffs here have no evidence to prove that any of the accused spot elements meet this limitation. Thus, VIZIO is entitled to summary judgment on all '370 patent claims.

**B.   The Alleged Patterns of Deformities Do Not "Vary" Along the Length or Width of the Panel Member" as Required in Every Asserted Claim (Nos. 1, 13, 29, 47)[3]**

None of the asserted claims are infringed because none of the accused panels have a "pattern of light extracting deformities" that "varies" as required by the claims.

As shown above, the fronts of the accused panels feature a pattern of linear stripes that do not vary—they are parallel lines of a constant pitch. The backs of the panels have spot elements. For the majority of them, "the center-to-center distance" (*i.e*., pitch) of those spots does not vary in either the length or width of the panel member—the regularity and placement of the spots are constant in the x and y axes.[4] *Cf*. Ex. B at ¶¶ 125–128. Mr. Bohannon's own photographs shows this consistent pitch. *See, e.g.,* p. 12 of Exs. A-1, A-2, A-3, A-6, A-7. For the remaining

---

3   The limitation states in full:  "where the pattern of light extracting deformities on or in at least one of the sides varies along at least one of the length and width of the panel member." *See* Ex. F ['370 patent] at claims 1, 13, 29, 47 (col. 9:17–19, 9:60–62, 11:13–15, 12:28–30).

4   Even Plaintiffs' technical expert on the state of the art at the time, Dr. Kahn, himself confirmed that a pattern of constant pitch along the length and width (*i.e*., the x or y axis) does not vary as required by the claims. *See* Ex. J at 332:17–333:17.

products, no discernable pattern in the first instance is shown in Mr. Bohannon's photographs, much less one that evidences that it "varies" as required. *See, e.g.,* page 12 of Exs. A-4, A-5, A-8 (showing images of spots in isolation without identifying a varying pattern).

Despite this, Mr. Bohannon asserts ipse dixit that "relative spacing" of spots "along the back side varies along the length and width of the panel member." *E.g.,* page 12 of Exs. A-1, A-2, A-3, A-6, A-7. Not only did Mr. Bohannon not provide measurements or data to support his statement, it can be disproven by taking a ruler to the pictures in his own report. *See id.* Fiat alone does not constitute evidence required to prove infringement. *See Anderson*, 477 U.S. at 249–50; *Moore*, 229 F.3d at 1112; *K-TEC*, 696 F.3d at 1374; *Arthur A. Collins*, 216 F.3d at 1046.

In the alternative, Mr. Bohannon argues that "the size of the [purported] deformities" also varies. *E.g.,* page 12 of Exs. A-4, A-5, A8. But having deformities vary in size is different than having the pattern of their distribution vary. The patent draws an express distinction between variation in size and variation in pattern—variations in pattern affect the position and/or number of elements in a set area (*i.e.*, their frequency), whereas variation in size affects the attributes of the individual elements themselves. The patent treats these as different concepts, and uses different claim language for each.

Where the claims require a size variation, the claims state that "the deformities" themselves "on or in one of the sides [must] vary." Ex. F at claims 8, 29, 47 (col. 9:40–41, 11:16–17, 12:31–32); *see also* claims 11, 22, 25, 30–37 (similar language). But, where pattern variation is required, like the claim limitation at issue here, different wording is used to require that "the **pattern**" of deformities "varies." *Id.* at claims 1, 13, 29, 47 (col. 9:17–19, 9:60–62, 11:13–15, 12:28–30) (emphasis added). Asserted claims 29 and 47 even recite both types of

10

elements—the "pattern of light extracting deformities … varies" (Ex. F at 11:13–14, 12:28–29) and also the "light extracting deformities … vary" (*id*. at 11:16–1812:31–33).

If different limitations use different claim language, they presumably mean different things.  *E.g*., *Karlin Tech., Inc. v. Surgical Dynamics, Inc*., 177 F.3d 968, 971–72 (Fed. Cir. 1999) (citing "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope."); *see also Bancorp Servs., L.L.C. v. Hartford Life Ins. Co*., 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("the use of [different] terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each.").  Here, the claim limitation does not read "where ~~the pattern of~~ the light extracting deformities … varies."  *Cf. Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").  Claim constructions should not read out or render language superfluous. *See Gen. Am. Transp. Corp. v. Cryo–Trans, Inc.,* 93 F.3d 766, 770 (Fed.Cir.1996).

The specification also distinguishes changing the placement and recurrence of elements (*i.e*., pattern changes) from changing the elements' size.  For example, the specification states that "[t]he pattern of light extracting deformities 21 shown in FIG. 4*a*" as including "a variable pattern"—and FIG. 4*a* shows equally sized spot elements placed into increasingly dense pitch patterns (*i.e*., closer together).  Ex. F ['370 patent] at 4:40–42 and Fig. 4*a*.  In contrast, the patent then differentiates varying the "shape" of the deformities.  *Id*. at 4:62–65. The patent then treats variation in frequency and variation in shape as distinct and alternative:  "For example, less [frequency] and/or smaller size deformities 21 may be placed on panel areas where less light

11

output is wanted.  Conversely, greater percentage of [frequency] and/or larger deformities may be placed on areas of the panels where greater light output is desired."  *Id*. at 4:67–5:4.

Thus, Mr. Bohannon cannot point to variation in the spots themselves (*e.g.*, size variation) to meet the separate requirement of pattern variation.  This reads "the pattern of … deformities … varies," *e.g.*, '370 patent at 11:13–14, as meaning the same thing as having the "deformities … vary," *e.g., id.* at 11:16–17, which reads the subject of the limitation, *i.e.*, "the pattern," out of the claims.  The impropriety of Mr. Bohannon's reading is thus purely in the Court's purview as a matter of law and ripe for summary judgment.  *See ART+COM*, 155 F. Supp. 3d at 507.  Summary judgment of non-infringement on all claims 1is thus appropriate.

**C.    The Alleged Deformities on the Front and Back of Panel Members Do Not "Vary in a Different Way or Manner" from Each Other as Required by Claims 29, 47**

The accused panels do not infringe claims 29 and 47 because the linear pattern on the front of the panels does not vary in any way.  Claims 29 and 47 require that "at least some of the light extracting deformities on or in one of the sides vary in a different way or manner than the light extracting deformities on or in the other side of the panel member."  Ex. F at 11:15–18, 12:31–34.  This requires the deformities on the front of the panel to vary, as well as the deformities on the back, and the way in which they vary must be different.  As illustrated above, however, the linear stripes on the front of the panels are uniform and do not vary at all in the first instance.  *See* pp. 31, 39 of Exs. A-1 to A-5 and A-8; Ex. A-6 at 32, 34; Ex. A-7 at 22.

Not to be constrained by his own photographic evidence, Mr. Bohannon nevertheless opines by fiat that "the light extracting deformities on the front side vary in their width … and linear shape."  *See* pp. 31, 39 of Exs. A-1 to A-5 and A-8; Ex. A-6 at 32, 41; Ex. A-7 at 22.  But Mr. Bohannon also testified that the lines "appear to be similar" and that he made no measurements to support his opinion.  *See* Ex. E at 461:12–14, 462:6–21 ("I haven't measured

them.  I can go back and measure them, I suppose….").  As shown above, Mr. Bohannon's own photographs show that the linear structures on the front of the accused panels do *not* vary. Mr. Bohannon cannot avoid summary judgment by disputing his own photographic evidence with a Pythonesque "yes they do."  *Cf. Anderson*, 477 U.S. at 249–50; *Moore*, 229 F.3d at 1112; *K-TEC*, 696 F.3d at 1374; *Arthur A. Collins*, 216 F.3d at 1046.

Summary judgment of non-infringement of claims 29 and 47 is thus appropriate.

**D.      The Panel Members of the Accused VIZIO Products Do Not Have Transition Regions as Required by Claims 13 and 47, or Optical Elements in Those Regions**

**1.      The Undisputed Facts Evidence that Claims 13 and 47 Are Not Satisfied**

As shown above, the fronts of the accused panels have linear stripes that begin at the very edge of the panel and run across its full surface.  Claims 13 and 47, however, require that the "transition region" exist "between the at least one input edge and the pattern**s** of light extracting deformities."  Ex. F ['370 patent] at 9:9:66–10:1, 12:34–36 (emphasis added).  That is, per the plain language of the claim, the transition region is an area "between" the panel edge and the patterns of deformities—*i.e*., an area at the edge with no deformities.  Since the front of the accused panels have stripes from edge to edge, they lack a transition region feature entirely.

For each of the accused VIZIO panels, Mr. Bohannon even confirms that the linear stripes "run the full length and/or width of the front side" of the panel.  *See* page 15 of Exs. A-1 to A-8.  This is also unequivocally shown in Mr. Bohannon's own photographic evidence:

13



Ex. A-2 at 24, 41 (showing "stripes" running through the purported "transition region"), *see also* pp. 24, 41 of Exs. A-1, and A-3 to A-8 (similar).

Despite the undisputed presence of the linear stripes from edge to edge, Mr. Bohannon nevertheless states that "there is nothing in the claim limitation that prevents me from attributing to the linear shapes in the transition region as 'optical elements' and the [same] linear shapes in the output region as 'deformities.'" Ex. C at 14. In other words, Mr. Bohannon ignores the linear deformities in the putative transition region—which would otherwise negate the limitation—by simply renaming them. According to Mr. Bohannon, he can rename the linear stripes near the panel's edge to be called "optical elements" instead of "deformities," and then, there will be no offending deformities in his transition region. At a location of his choosing a centimeter or two away, he can name them back to being "deformities" to meet the requirement that deformities exist on both sides of the panel, ignoring they were the same structure all along.

While this is a neat trick, it flatly contradicts the construction Plaintiffs' validity expert applied in examining prior art. Dr. Kahn testified that he understood that "optical elements in the transition region are **different structures** than the deformities in the output region." Ex. I at 164:9–14, 161:4–16 (emphasis added). In fact, he specifically testified that "the transition region cannot overlap with the deformities on one of the sides of the panel." Ex. I at 160:19–161:16. Instead, the transition region "must be between the input edge and the patterns of deformities, …

14

on both sides of the panel." *Id*. at 164:2–8. Dr. Kahn testified that, if the distance between the edge and the alleged deformity pattern (here, the stripes) "is zero, there is no transition region." *Id*. As applies equally here, Dr. Kahn explained, "it's the same pattern that extends to the edge. There's no transition region. There's nothing to transition to." *Id*. at 162:12–163:13.

It goes without saying that Plaintiffs cannot have their validity expert use a narrow construction to exclude prior art and then simultaneously have their infringement expert use an expansive construction to reach opposite conclusions of infringement. *E.g*., *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[T]he claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses…. A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to find infringement.") (internal cites and quotes omitted). Thus, Plaintiffs cannot escape the fact that the accused devices have no transition region by employing clever renaming games that change and expand the construction applied by their invalidity expert.

Moreover, in VIZIO's accused products, other than the spots and linear stripes identified by Mr. Bohannon as constituting deformities, no other "optical" features exist in Mr. Bohannon's putative "transition zone" to meet the additional requirement that other "optical elements for reflecting or refracting light" must also exist in the purported transition zone. *See* Ex. F at 10:2–4, 12:37–39. Thus, not only does the presence of the linear stripes running to the edge of the panel categorically establish that there is no transition region in the accused designs, but the absence of other "optical elements" in that zone means this additional limitation is not met either.

Thus, summary judgment of non-infringement on claims 13 and 47 should be granted.

### 2. Plaintiffs Cannot Rely on the Doctrine of Equivalents to Avoid Judgment

Lastly, in a single sentence appended to Mr. Bohannon's discussion of transition regions, he asserts in conclusory terms that, "if it is ultimately determined that this limitation is not met

15

literally", then it is met "under the doctrine of equivalents." Ex. A at 40.  Mr. Bohannon does not, however, identify any feature in VIZIO's accused products that is a purported equivalent. Nor does he provide any required analysis directed to such a feature.  Likewise, his claim charts are silent on equivalents and do not identify any support for the doctrine.  *See* pp. 23–24 and 40–41 of Ex. A-1 to A-8.  In fact, Mr. Bohannon concedes that his assertion of equivalents is merely "kind of a catch-all" because he "hate[s] to be absolute."  Ex. D at 266:15–19.

But an expert cannot avoid summary judgment or create a genuine issue of material fact concerning equivalents by offering generalized or conclusory catch-all "opinions."  *See Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005).  By failing to identify any equivalent features or supporting facts for his conclusory view, Mr. Bohannon has not presented any "fact" suitable for trial.  This confirms that summary judgment is warranted.

**E.      Plaintiffs Provide No Evidence Concerning Claim 8 of the '370 Patent**

Mr. Bohannon's claim charts identify claim 8 of the '370 patent as an asserted claim.  *See* page 4 of Exs. A-1 to A-8.  But Mr. Bohannon does not list claim 8 in his report as asserted, *see* Ex. A at 13, nor chart or provide any opinion, evidence, or argument concerning the claim.  Thus VIZIO is entitled to summary judgment of no infringement on this claim.

### VI.  CONCLUSION

For the reasons stated above, VIZIO respectfully requests that the Court grant VIZIO's motion for summary judgment of non-infringement on all '370 patent asserted claims.

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on August 26, 2016, I caused to be electronically filed a copy of the foregoing sealed document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following counsel of record:

> Joseph J. Farnan, Jr.
> Brian E. Farnan
> Michael J. Farnan
> FARNAN LLP
> 919 N. Market Street, 12th Floor
> Wilmington, DE 19801
> farnan@farnanlaw.com
> bfarnan@farnanlaw.com
> mfarnan@farnanlaw.com
> *Attorney for Plaintiff*

I further certify that on August 26, 2016, I caused a copy of the foregoing sealed document to be served by e-mail on the above-listed counsel and on the following:

> Jeffrey R. Bragalone
> Patrick J. Conroy
> Daniel F. Olejko
> Justin B. Kimble
> T. William Kennedy, Jr.
> James R. Perkins
> Stephanie R. Wood
> BRAGALONE CONROY PC
> Chase Tower
> 2200 Ross Avenue, Suite 4500W
> Dallas Texas 75201-7924
> *jbragalone@bcpc-law.com*
> *pconroy@bcpc-law.com*
> *dolejko@bcpc-law.com*
> *jkimble@bcpc-law.com*
> *bkennedy@bcpc-law.com*
> *jperkins@bcpc-law.com*
> *swood@bcpc-law.com*

01:19194088.1

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

 */s/ Pilar G. Kraman*
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 N. King Street
Wilmington, DE 19801
*pkraman@ycst.com*

*Attorney for Defendant VIZIO, Inc.*

01:19194088.1

Dated: August 26, 2016                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Of Counsel:*

GIBSON, DUNN & CRUTCHER LLP
Jason C. Lo
Raymond A. LaMagna
Jeffrey G. Lau
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
jlo@gibsondunn.com
rlamagna@gibsondunn.com
jglau@gibsondunn.com

Cassandra Gaedt-Sheckter
1881 Page Mill Road
Palo Alto, CA 94304-1211
(650) 849-5300
cgaedt-sheckter@gibsondunn.com

/s/ *Pilar G. Kraman*

_____

Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
apoff@ycst.com
pkraman@ycst.com

*Counsel for Defendant VIZIO, Inc.*

17