# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DELAWARE DISPLAY GROUP LLC
AND INNOVATIVE DISPLAY
TECHNOLOGIES LLC

    Plaintiffs,

v.

VIZIO, INC.,

    Defendant.

Case No. 13-cv-02112-RGA

## REBUTTAL EXPERT REPORT OF THOMAS L. CREDELLE

## RESTRICTED—ATTORNEY'S EYES ONLY

RESTRICTED—ATTORNEY'S EYES ONLY

## I.   INTRODUCTION

1.      My name is Thomas Credelle, and I have been retained by the law firm of Gibson, Dunn & Crutcher LLP on behalf of VIZIO, Inc. ("VIZIO") as an expert in the relevant art.

2.      I understand that Plaintiffs Delaware Display Group LLC and Innovative Display Technologies LLC (collectively, "DDG" or "Plaintiffs") assert that several VIZIO products (the "Accused Products") infringe certain claims of U.S. Patent Nos. 7,434,974 ("the '974 patent") and 7,537,370 ("the '370 patent") (collectively, the "Asserted Patents").  I have been asked to provide my opinions and views on whether the Accused Products contain assemblies that infringe the asserted claims.  In particular, I have also been asked to review and respond to the contentions and conclusions contained in William Bohannon's Expert Report On Infringement ("Bohannon Report") and accompanying exhibits.  I have also been asked to evaluate the ease and practicality of designing and utilizing backlight units that do not incorporate all elements claimed in the Asserted Patents (*i.e.*, designs that do not infringe those patents).  In addition, I have been asked to review and evaluate the technical-related statements and assumptions in the report of Dr. Patrick Kennedy, to which I have also responded below, and to provide my views and understanding of the technology and Asserted Patents at issue to VIZIO's economic expert, Dr. Kenneth Serwin.  As support and context for the above, I provide here the relevant general background of the Asserted Patents and of the area of technology in which those patents operate.

3.      I am compensated at the rate of $350/hour for my work, plus reimbursement for expenses.  My compensation has not influenced any of my opinions in this matter and does not depend on the outcome of this proceeding or any issue in it.

4.      My opinions and underlying reasoning for these opinions are set forth below.

1

RESTRICTED—ATTORNEY'S EYES ONLY

1.    **"where the <u>pattern</u> of light extracting deformities on or in at least one of the sides <u>varies along at least one of the length and width</u> of the panel member" (claims 1, 13, 29, and 47)**

122.    The asserted independent claims of the '370 patent each require that the "pattern of light extracting deformities on or in at least one of the sides varies along at least one of the length and width of the panel member." '370 patent at claims 1, 13, 29, 47.

123.    Mr. Bohannon has failed to demonstrate that this element is met for the accused VIZIO products.  For example, the alleged patterns of deformities identified by Mr. Bohannon in his claim charts for this element in the E291i-A1, M420KD, M551d-A2, M3D421SR, and M420SV do not vary along either the length or width of the panel member, but rather, maintain a constant pitch along both the x and y axes.  That is, the patterns themselves do not vary—the arrangement of elements remains the same along both length and width.  The claims do *not* read "where ~~the pattern of~~ the light extracting deformities on or in at least one of the sides varies along at least one of the length and width of the panel member."  That is, the claim does not say that the deformities must vary from one another in the x or y axis, as would be implied by the edited language illustrated in the last sentence.  Rather, the claim states that it is "*the pattern*" that "varies along at least one of the length and width."

124.    This construction is consistent with and supported by the patentee's statements made during primary prosecution to distinguish the Balchunas reference.  *See* Resp. to Office Action, Jul. 10, 2008, at 13.  There, the patentee argued that variation in size (*i.e.*, depth) alone of the elements at issue did not meet the above claim language and fall within the invention.  *Id.* (arguing that the "grooves of the same type and shape as shown in Fig. 4, only varying in depth as the distance between the light source and the grooves increases (4:45-52)").  That is, where the deformities varied *in size* along the panel member, to overcome prior art, the patentee

<u>RESTRICTED—ATTORNEY'S EYES ONLY</u>

confirmed that the claim requirement was not met.  That is, "*the pattern of* light extracting deformities" did not vary as required by the claim.  The same result should apply here.

125.    For example, with respect to the M420KD, Mr. Bohannon alleges that the "size of the deformities and their relative spacing on the back side varies along the length and width of the panel member."  Bohannon Report TD-32 at 12, 21, 30, 38.  Mr. Bohannon provides the following two photographs—photographs of the back of the optical panel member near the LEDs and away from the LEDs at 20x—to support his proposition:





Bohannon Report TD-32 at 12, 21, 30, 38

126.    As the above photographs show, however, the relative spacing of the alleged deformities do not, as Mr. Bohannon claims, vary along either the width or the length of the panel member—the center-to-center distance of each of the circular dots is the same.  In addition, the pitch of the alleged deformities also remains constant across both the length and the width of the panel member.  The photographs Mr. Bohannon relies upon with respect to this element for the E291i-A1, M3D421SR, and M420SV also show that the center-to-center distance of the alleged deformities on the back side of these products remains the same and the pitch of the alleged deformities on the alleged back side of these products remains constant.  *See* TD-31

46

**RESTRICTED—ATTORNEY'S EYES ONLY**

(M3D421SR) at 12, 21, 30, 38; TD-33 (M420SV) at 12, 21, 30, 38; TD-37 (E291i-A1) at 12, 21.

Notably, Mr. Bohannon does not address this element in his report itself—he offers only his conclusory statement in his claim charts summarily asserting that the limitation is met based on his pictures. As shown above and below, however, he is wrong.

127. The photographs I took of the alleged deformity pattern on the back of accused VIZIO products also confirm that the center-to-center distance of the alleged deformities is the same, and that the pitch of the alleged deformities is constant. Examples of these photographs are shown below. In the photographs, the magnification for the set of pictures associated with a single device is the same.

| Alleged Deformity Pattern at Various Locations on Back of M420KD Panel Member (photographs A102, A103, and A104) | Alleged Deformity Pattern at Various Locations on Back of E291i-A1 Panel Member (photographs A096, A097, A098) |
|---|---|
| | |
| | |

**RESTRICTED—ATTORNEY'S EYES ONLY**



| Alleged Deformity Pattern at Various Locations on Back of M3D421SR Panel Member (photographs A150, A151, A152) | Alleged Deformity Pattern at Various Locations on Back of M420SV Panel Member (photographs A160, A161, A162) |
|---|---|
| | |
| | |
| | |

128.    As discussed above, the alleged pattern of deformities on the back side of the panel members of these accused VIZIO products are constant across the length and the width of

**RESTRICTED—ATTORNEY'S EYES ONLY**

the panel members and thus do not vary along either the length or the width of the panel member, as required by claims 1, 13, 29, and 47 of the '370 patent.

129.    Moreover, some of the accused VIZIO products do not have a *pattern* of light extracting deformities on the back side of the panel members.  For example, none of the alleged deformities on the back sides of the M471i-A2, M501d-A2, and M551d-A2 have any discernible pattern.  *See* TD-34 (M501d-A2R) at 11-13; TD-35 (M551d-A2) at 11-13; TD-38 (M471i-A2) at 11-13; *see also* A126, A127, A129 (M471i-A2); A052, A056, A057 (M501d-A2R); A116, A117 (M551d-A2).  The accused VIZIO products fail to satisfy this limitation for this reason as well.

**2.    "wherein the panel member has a transition region between the at least one input edge and the patterns of light extracting deformities" (claims 13, 47)**

130.    Claims 13 and 47 require that the panel member have a "transition region between the at least one input edge and the patterns of light extracting deformities."  '370 Patent at claims 13, 29 (emphasis added).  This requires the transition region to be located between, as the plain language of the claim states, the "input edge" and the "patterns" (plural) of alleged deformities (*i.e.*, the start of both the linear ridges on the front side and the dot pattern on the back side of the panel member).  Notably, in claims 13 and 47 (and indeed all of the independent claims), the "pattern" on the front side and the "pattern" on the back side are each singular.[18]  In fact, based on my inspection of the '370 Patent Accused Products, each accused product had only dot-type elements on the back side of the light guide and linear elements on the front—two alleged patterns in all, one alleged pattern on each side.

---

[18]    For example, claims 13 and 29 require "both the front and back sides having a *pattern* of light extracting deformities" and "the *pattern* of light extracting deformities on or in at least one of the sides varies along at least one of the length and width of the panel member."  '370 Patent at claims 13, 29 (emphasis added).

49

RESTRICTED—ATTORNEY'S EYES ONLY

| | | |
|---|---|---|
| TD-35 at 24, 41; *see also* TD-35 at 23, 40. | M551d-A2 | |
| TD-36 at 24, 43; *see also* TD-36 at 23, 42. | M3D550SL | |
| TD-38 at 24, 41; *see also* TD-38 at 23, 40. | M471i-A2 | |



133.    As the above photos show, the "transition region" identified by Mr. Bohannon is not between both the alleged pattern of deformities on the front side and the alleged pattern of deformities on the back side.  Rather, Mr. Bohannon's alleged "transition region" overlaps completely with the alleged front side deformities—the linear ridges.  As I can confirm based on

52

<u>**RESTRICTED—ATTORNEY'S EYES ONLY**</u>

my inspection, the linear ridges run the full length of the light guide, edge to edge.  *Cf.* A144,
A145, A146 (M3D421SR); A101, A105 (M420KD); A156, A157, A158 (M420SV); A123,
A124, A125 (M471i-A2).  If one assumes as Mr. Bohannon does (inaccurately as explained
below) that these linear ridges constitute "light extracting deformities" as called for in the claims,
then this architecture runs the full front surface of the accused products—there is no region
"between" the input edge and these ridges to serve as a transition region.

134.    Mr. Bohannon's descriptions of the photos above confirm that the alleged
transition regions are not between both the alleged front and back patterns of deformities.  In his
description of the above photos, Mr. Bohannon states: "The transition region is defined as the
area of the optical conductor that corresponds to the area between the light source and the
beginning of the circular deformities on the bottom of the panel."  *See* TD-31 at 23, 40; TD-32 at
23, 40; TD-33 at 23, 40; TD-34 at 23, 40; TD-35 at 23, 40; TD-36 at 23, 42; TD-38 at 23, 40; *see
also* Report at 39.  But this is not what the claim language says.  In other words, Mr. Bohannon
alleges only that the transition region is between the light source and the beginning of the alleged
deformities *on the back of the panel*.  He does not allege, as the claim requires, that the transition
region is between the light source and the alleged deformities *on the front of the panel*.  This is
because, as shown above, Mr. Bohannon's alleged transition region completely overlaps with the
alleged pattern of deformities on the front side of the '370 Patent Accused Products, which is not
permitted by the claim.

135.    Furthermore, if Mr. Bohannon's view is indulged that the linear ridges constitute
a "pattern of light extracting deformities" that otherwise satisfy the claim, then, as explained
above, the purpose and utility of a transition region would be defeated if such extraction
elements existed in the transition region because light would be extracted.  As explained above,

53

RESTRICTED—ATTORNEY'S EYES ONLY

Under penalty of perjury, I, Thomas L. Credelle, declare that foregoing statements are

true and correct.

June 21, 2016                    _____

                                 Thomas L. Credelle