IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DELAWARE DISPLAY GROUP LLC and
INNOVATIVE DISPLAY TECHNOLOGIES
LLC,

        Plaintiffs,

v.

VIZIO, INC.,

        Defendant.

Civil Action No. 13-2112-RGA

## MEMORANDUM OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., FARNAN LLP, Wilmington, Delaware; Jeffrey R. Bragalone, Esq., Patrick J. Conroy, Esq., Justin B. Kimble, Esq. (argued), Daniel F. Olejko, Esq., T. William Kennedy, Jr., Esq. (argued), James R. Perkins, Esq. (argued), BRAGALONE & CONROY LLP, Dallas, Texas.

    Attorneys for Plaintiffs

Pilar G. Kraman, Esq., YOUNG, CONAWAY, STARGATT & TAYLOR, Wilmington, Delaware; Jason C. Lo, Esq. (argued), Raymond A. LaMagna, Esq. (argued), GIBSON, DUNN & CRUTCHER LLP, Los Angeles, California.

    Attorneys for Defendant

March 1, 2017

1

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

The Plaintiffs are Delaware Display Group LLC and Innovative Display Technologies LLC. The Defendant is VIZIO, Inc. On January 10, 2017, the Plaintiffs and Defendant submitted a Joint Status Report identifying motions that require decision. (D.I. 364). This memorandum addresses the following summary judgment motions identified in that Report: (1) Defendant's Motion for Summary Judgment of Non-Enablement and Written Description (D.I. 274); (2) Defendant's Motion to Exclude Expert Testimony of Dr. Frederic Kahn on the Issues of Non-Enablement and Written Description (D.I. 275); (3) Defendant's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 7,537,370 (D.I. 278); (4) Plaintiffs' Motion for Partial Summary Judgment (on VIZIO's § 112 Enablement/Written Description Defense) (D.I. 280); (5) Plaintiffs' Motion to Strike VIZIO's Opinions Related to Alleged Non-Infringing Alternatives (D.I. 284); and (6) Plaintiffs' Motion to Exclude Testimony Relating to the Expert Reports of Richard A. Flasck (D.I. 287). The parties fully briefed these motions. I held oral argument on February 13, 2017. (D.I. 379 ("Tr.")).

## I. LEGAL STANDARD

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2

2011). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### B. Motion to Strike

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony, stating that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

3

>  opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit.  Qualification refers to the requirement that the witness possess specialized expertise.  We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert."  Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief.  In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity."  Finally, Rule 702 requires that the expert testimony must fit the issues in the case.  In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.  The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury.  *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1]  The proponent of expert testimony must "demonstrate by a

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but subsequent amendments to the rule were not intended to make any substantive change.

4

preponderance of evidence that the [expert's] opinions are reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994).

## II. DISCUSSION

### A. Enablement and Written Description

#### 1. Background

The material facts are as follows. The patents-in-suit are U.S. Patent Nos. 7,434,974 (D.I. 277-7 ("'974 Patent")) and 7,537,370 (D.I. 277-8 ("'370 Patent")). The patents-in-suit claim priority to June 27, 1995. (*See* '974 Patent; '370 Patent). The abstract of the '974 patent provides:

> Light emitting panel assembly includes a light emitting panel member received in a cavity or recess in a tray or housing. The panel member has a pattern of light extracting deformities on or in at least one surface of the panel member to cause light received from at least one LED light source positioned near or against the light entrance surface of the panel member to be emitted from a light emitting surface of the panel member. The tray or housing acts as an end edge and/or side edge reflector for the panel member to reflect light that would otherwise exit the panel member through the end edge and/or side edge back into the panel member for causing additional light to be emitted from the panel member.

('974 Patent, abstract). The abstract of the '370 patent provides:

> Light emitting panel assemblies include an optical panel member having a pattern of light extracting deformities on or in one or both sides to cause light to be emitted in a predetermined output distribution. The pattern of light extracting deformities on or in one side may have two or more different types or shapes of deformities and at least one of the types or shapes may vary along the length or width of the panel member. Where the light extracting deformities are on or in both sides, at least some of the deformities on or in one side may be of a different type or shape or vary in a different way or manner than the deformities on or in the other side.

('370 Patent, abstract).

For the purposes of the enablement and written description analysis of the '974 patent, claim 1 of the '974 patent is representative:

5

> 1. A light emitting panel assembly comprising at least a light emitting panel member having a light entrance surface and a light emitting surface, at least one LED light source positioned near or against the light entrance surface, and a tray or housing having a cavity or recess in which the panel member is entirely received, wherein the panel member has a pattern of light extracting deformities on or in at least one surface to cause light to be emitted from the light emitting surface of the panel member, and the tray or housing includes end walls and side walls that act as end edge reflectors and side edge reflectors for the panel member to reflect light that would otherwise exit the panel member through an end edge and/or side edge back into the panel member and toward the pattern of light extracting deformities for causing additional light to be emitted from the light emitting surface of the panel member, wherein the tray or housing provides structural support to the panel member and has posts, tabs, or other structural features that provide a mount for mounting of the assembly into a larger assembly or device.

('974 Patent). For the purposes of the enablement and written description analysis of the '370 patent, claim 1 of the '370 patent is representative:

> 1. A light emitting panel assembly comprising at least one light source, an optical panel member having at least one input edge for receiving light from the at least one light source, the panel member having front and back sides and a greater cross sectional width than thickness, both the front and back sides having a pattern of light extracting deformities that are projections or depressions on or in the sides to cause light to be emitted from the panel member in a predetermined output distribution, where the pattern of light extracting deformities on or in at least one of the sides varies along at least one of the length and width of the panel member and at least some of the light extracting deformities on or in one of the sides are of a different type than the light extracting deformities on or in the other side of the panel member, and at least one film, sheet or substrate overlying at least a portion of one of the sides of the panel member to change the output distribution of the emitted light such that the light will pass through a liquid crystal display with low loss.

('370 Patent).

The novel aspect of the claimed invention of the '974 patent is using trays as a reflector to direct the light from the LED light source instead of using a different reflector. (*See* '974 Patent; Tr. 80:12–14, 94:4–9).

6

The novel aspect of the claimed invention of the '370 patent is using a two-sided light guide instead of a one-sided light guide in order to better focus light in a light emitting panel. (*See* '370 Patent; Tr. 80:14–16, 94:12–23[2]).

The claimed invention of the '974 Patent further requires a "LED light source" and the claimed invention of the '370 Patent requires a "light source." (*See* '974 Patent; '370 Patent; D.I. 276 at p. 3).

The light source limitation is "applicable to all sizes and types of edge-lit displays." (D.I. 276 at p. 3; D.I. 277-5 ¶¶ 25, 27, 29). A person of skill in the art in 1995 would be able to use either of the patents-in-suit to make LED edge-lit BLUs for devices "if they are small." (D.I. 276 at p. 7). For example, the patents could be used to make "[m]aybe 2- to 4- inch diagonal devices." (*Id.*). On the other hand, "LED edge-lit monitors of only 15 or 17 inches 'couldn't be done in 1995' . . . ." (*Id.*). I will refer to the latter type of devices as the "larger BLUs."

There is no genuine dispute that the light source limitation is merely a portion of the claimed invention, and not the novel aspect of the claimed invention. (*See* Tr. 80:17–18; 94:5–23). Defendant cites to D.I. 292, Ex. F at ¶¶ 346, 348, 352–53, 371, 373, 377–78 to argue otherwise. (D.I. 336 at 14). These cited paragraphs do not support the proposition that the light source limitation is the novel aspect of the claimed invention. The cited paragraphs merely show that, because the '974 patent required an LED light source and the cited prior art used incandescent lighting technology, Plaintiffs' expert Dr. Kahn believed that the prior art failed to meet the LED light source limitation of the '974 patent. It is an unreasonable to look at these paragraphs in isolation and conclude from them that Dr. Kahn is saying that the light source

---

[2] This portion of the transcript mistakenly calls the '370 patent the '974 patent.

limitation is the novel aspect. This evidence is not enough to create a genuine dispute of material fact that the light source limitation is the novel aspect the claimed invention. This evidence is consistent with the fact that the light source limitation forms only a tangential part of the asserted claims.

Defendant does not otherwise dispute that, setting the light source limitation aside, the claimed invention is adequately enabled and described. (*See generally* D.I. 276; D.I. 336).

### 2. Enablement

The enablement requirement, considered a separate and distinct requirement contained in 35 U.S.C. § 112, ¶ 1, assesses whether "one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008). Because the enablement inquiry takes into account what is known to one skilled in the art, the Federal Circuit has "repeatedly explained that a patent applicant does not need to include in the specification that which is already known to and available to one of ordinary skill in the art." *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004). "Enablement is a legal question based on underlying factual determinations." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015). Factors considered in assessing the enablement requirement include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). "A party must prove invalidity for lack of enablement by clear and convincing evidence." *Vasudevan*, 782 F.3d at 684.

Here, one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation. In light of the overall claimed invention, the mere fact

8

that one skilled in the art would not be able to make "larger BLUs" in 1995 is not enough for Defendant to survive Plaintiffs' motion for partial summary judgment, let alone prevail on Defendant's own motion. The light source limitation is tangential in comparison to the claimed invention. It is not the novel aspect. As such, disclosure of the "smaller BLUs" is sufficient for one skilled in the art to practice the light source limitation. Thus, because one could adequately practice the light source limitation and Defendant does not otherwise dispute that the claimed invention is enabled, the amount of direction or guidance presented, the state of the prior art, and the presence of working examples sufficiently sheds light on how to practice the light source limitation and the claimed invention as a whole. The quantity of experimentation necessary to practice the claimed invention is *de minimis*.

Defendant argues that the outcome in *Automative Technologies International, Inc. v. BMW of North America, Inc.*, 501 F.3d 1274 (Fed. Cir. 2007), "illustrates the enablement problem here." (D.I. 276 at p. 15). I disagree. *Automative Technologies* is distinguishable because the enablement issue there related to the novel aspect of the patent, not to a tangential limitation. *See generally Auto. Techs.*, 501 F.3d 1274.[3] There the court found that "[t]he novel aspect of this invention is using a velocity-type sensor for side impact sensing." *Id.* at 1283. Because electronic side impact sensors were "a distinctly different sensor compared with the well-enabled mechanical side impact sensor," the court found inadequate enablement. *Id.* at 1285. Here, if the light source limitation were the novel aspect of the asserted claims, *Automative Technologies* would be more on point. Because the light source limitation is not, I find that there is adequate enablement of how to make or use this tangential limitation. *See also*

---

[3] *MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*, 687 F.3d 1377 (Fed. Cir. 2012), is distinguishable for the same reason.

9

*Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44237, at *6 (N.D. Cal. Jan. 9, 2012) (finding that radiofrequency energy was only a portion of the invention and not the entire novel aspect and that it was therefore appropriate for the jury to supplement the specification on how to use radiofrequency energy with the knowledge of one skilled in the art).

To hold otherwise would drastically alter the law of enablement. Suppose I had a product claim that claimed a camera where the novel aspect was a design that allows it to take improved pictures. As an additional limitation, I require a battery for the camera. The only role the battery plays is to supply the power to the camera. The battery plays no other meaningful role. It is clear that the battery is not the focus of the invention. My specification allows one skilled in the art to make the battery technology of the time and implement my novel design. Years later, novel battery technology is developed. It would be very harsh for enablement law to render my product claim invalid for lack of enablement because my patent did not teach the new battery technology when batteries were not even the focus of my claim. The law of enablement does not command that result, nor should it.

The rationale for the enablement requirement is to "ensure[ ] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims." *Sitrick*, 516 F.3d at 999. I think that in my battery example, and with respect to the claimed inventions of the '974 and '370 patent, the public knowledge is adequately enriched by the patent specification to the degree at least commensurate with the scope of the claims.

### 3. Written Description

The written description requirement contained in 35 U.S.C. § 112, ¶ 1 requires that the specification "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharm., Inc., v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed.

10

Cir. 2010) (en banc) (alteration in original) (internal quotation marks omitted). "In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* The written description inquiry is a question of fact. *See id.* Although it is a question of fact, "[c]ompliance with the written description requirement . . . is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008). "A party must prove invalidity for lack of written description by clear and convincing evidence." *Vasudevan*, 782 F.3d at 682.

My enablement analysis is directly relevant here. The specification clearly allows persons of ordinary skill in the art to recognize that the inventor invented what is claimed in the '974 and '370 patent. There is adequate disclosure of the light source limitation and of the claimed subject matter as a whole.

Since there is no genuine dispute of material fact, Plaintiffs' partial motion for summary judgment with respect to enablement and written description is granted. Defendant's corresponding motion is denied. Accordingly, Plaintiffs' motion to strike Defendant's expert's testimony with respect to enablement and written description and Defendant's corresponding motion are both dismissed as moot.

### B. Non-Infringement of U.S. Patent No. 7,537,370

Defendant's motion is denied because there are genuine disputes of material fact as to whether the limitations "projections or depressions on or in the sides," "where the pattern of light extracting deformities on or in at least one of the sides varies along at least one of the length and width of the panel member," "at least some of the light extracting deformities on or in one of the

sides vary in a different way or manner than the light extracting deformities on or in the other side of the panel member," and "transition region" are met. [4]

### C. Plaintiffs' Motion to Strike VIZIO's Opinions Related to Alleged Non-Infringing Alternatives

The parties dispute whether statements of Defendant's infringement expert, Mr. Credelle, and damages expert, Dr. Serwin should be stricken. (D.I. 285; D.I. 316; D.I. 333). I deny Plaintiffs' motion to strike. VIZIO has set forth adequate information for *Daubert* purposes that VIZIO had the ability to implement its alleged non-infringing alternatives. VIZIO has set forth adequate information for *Daubert* purposes that the alleged non-infringing alternatives are not equivalent to the accused products. VIZIO has set forth adequate information for *Daubert* purposes that the alleged non-infringing alternatives are not purely speculative. Plaintiffs argue that certain statements of Mr. Credelle and Dr. Serwin constitute *ipse dixit* testimony. (D.I. 285 at 13–15). They are not *ipse dixit* testimony because they are based on Mr. Credelle's experience and adequate facts. Cross-examination is more suitable for Plaintiffs' concerns.

### III. CONCLUSION

A separate order will be entered.

---

[4] Defendant's concerns about the doctrine of equivalents and claim 8 are resolved. (D.I. 317 at p. 15).